**Robert Marinelli**
ATTORNEY AT LAW
305 BROADWAY, 9th Floor
NEW YORK, NEW YORK 10007
Telephone: (212) 822-1427
Facsimile: (212) 202-9646

January 28, 2016

BY ECF
Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Cooper v. City of New York, et al., No. 14 Civ. 1761 (RJD) (RML)

Dear Judge Levy:

    I represent Plaintiff in the above captioned action. Plaintiff renews his motion to compel Defendants to produce Defendant Pizzarro's undisclosed personnel and disciplinary records. Plaintiff also requests that Defendants be ordered to produce a certain memo book for Plaintiff's inspection. Plaintiff and Defendants have conferred on these issues and have been unable to reach a resolution.

### I. Defendants Must Produce Pizzarro's Undisclosed Personnel And Disciplinary Records To Plaintiff

#### a. Defendants' Deficient Production Of Pizzarro Personnel And Disciplinary Records To Date

On September 9, 2014, Plaintiff served Defendants with discovery demands seeking, in relevant part:

> "all documents in the possession, custody or control of the NYPD or of any other department or agency of the City of New York including all underlying files, transcripts of all hearings, recordings of all interviews and statements and all exhibits including audio-visual materials reflecting all employment-related proceedings (including, but not limited to, inquiries and investigations)".

To date, Defendants have produced no responsive documents beyond the year 2008, save for a two-page document containing pedigree information.[1] Defendants' initial production of Pizzarro's personnel records, evaluations and progress reports is being filed under seal, as are Defendants' recent disclosures. See Exhibits A and B.[2]

### b. Evidence Demonstrates That Additional Pizzarro Personnel And Disciplinary Records Exist Which Are Relevant And Discoverable

#### i. Evidence That Additional Records Exist

Defendants assert that no additional personnel and disciplinary records exist. This cannot be true.

In the past year, Pizzarro was promoted to detective only to be subsequently deemed a "liability" to the department. Such actions could not occur without a paper trail. This is particularly so here, where the Defendant is a union member working for a large municipal department under a collective bargaining agreement. It is similarly impossible that no records have been created in the past seven years. Moreover, if defendants are correct that there are no records, Pizzarro lied when he testified in his deposition that he had been receiving bi-monthly performance evaluations.

Plaintiff respectfully requests that Your Honor order defendants to produce all records responsive to plaintiff's discovery request. Additionally, Plaintiff requests an affirmation from a party with first-hand knowledge that complete disclosures have been made.

#### ii. The Additional Records Which Show Pizzarro's Extensive History Of Misconduct Are Relevant And Discoverable

##### 1. The Relevance Of Pizzarro's Misconduct, Generally

In Defendants' November 24, 2015 letter, Defendants argue that Plaintiff has not shown that the personnel records are relevant to this action or admissible at trial. Plaintiff disagrees. The nature and scope of Pizzarro's misconduct over the course of his employment with the NYPD is so remarkable the records are relevant to Plaintiff's claims against the municipality, see, e.g., Vann v. City of N.Y., 72 F.3d 1040, 1045 (2d Cir. 1995), can lead to FRE 404(b) evidence, see, e.g., Frails, 236 F.R.D. at 117, and may provide leads as to relevant witnesses, see Pacheco, 2006 WL 648057, at *1.[3]

---

[1] Defendants also produced certain disciplinary records containing defendants' CCRB and IAB histories.

[2] Defendants supplement contains the two additional pages of pedigree information.

[3] Defendants also argue that Plaintiff has not shown admissibility of the records. Plaintiff is not required to show actual admissibility of evidence during pretrial discovery. In fact,

    2.   **The Relevance Of The Fact That Pizzarro Has Been Sued In Federal Court Fourteen Times For Civil Rights Violations**

As just one example of Pizzarro's history of misconduct, Pizzarro testified at his October 8, 2015 deposition that he has been sued multiple times in federal court for civil rights violations, but he did not know how many. A review of the Public Access To Court Electronic Records ("PACER") Web site shows that Pizzarro has been named a defendant in fourteen federal civil rights lawsuits. Plaintiff is unaware of Pizzarro's litigation history in the state courts.

Defendants urge the Court to discount the significance of the frequency with which Pizzarro has been sued for committing civil rights lawsuits because Defendants are of the opinion that those actions were "frivolous." Defendants' argument is unavailing. Plaintiff respectfully argues that Defendants' opinion about those actions cannot serve as evidence with which to defeat Plaintiff's satisfaction of the liberal definition of relevance.

    3.   **Pizzarro's Apparently Perjurious Testimony In The Underlying Criminal Matter**

On the subject of evidence, it should be noted that Defendants' mere opinion about the quality of Pizzarro's performance as a police officer is undercut by actual evidence existing in the record of the criminal matter underlying this civil rights action.

After hearing Pizzarro testify at a suppression hearing in the underlying criminal case, Judge George Grasso, citing "multiple and significant inconsistencies inherent in his [Pizzarro's] testimony," found Pizzarro "unworthy of belief" due to his "bizarre and implausible" testimony. <u>See</u> Exhibit C, Copy of Judge Grasso's decision dated 12/12/13, pages 5, 8 and generally.

Pizzarro's "bizarre and implausible" testimony centered around his disproven claim that he could not produce his memo book because Hurricane Sandy washed it away in October 2012. Plaintiff's request that Defendants produce that memo book is the subject of the second part of Plaintiff's motion to compel discussed in the following section of this letter.

**II.  Defendants Must Produce Pizzarro's Memo Book**

On November 14, 2013, Pizzarro under oath in a suppression hearing before Judge Grasso that that the memo book used during plaintiff's arrest was in a locker that was "washed away" by the force of Superstorm Sandy ("Sandy") and that he never saw this memo book again. Sandy hit New York on October 28, 2012.

---

Federal Rule of Civil Procedure ("FRCP") 26(b)(1) expressly provides that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable" and instead describes discovery's scope as permitting parties "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Shortly after plaintiff's November testimony, plaintiff's criminal defense attorney obtained the "missing" memo book and produced it to the criminal court.

When Pizzarro was confronted with the memo book's existence, he claimed that the memo book was lost in the "Sandy era" and had located a few weeks earlier in "a garbage bag" in an out of the way room in his precinct. See Exhibit D, Pizzarro Testimony in December 4, 2013 Suppression Hearing pages 23 through Page 24.

Judge Grasso noted many reasons why Pizzarro's testimony about the memo book was implausible, to which the undersigned would like to add yet another reason, which is that in March 2013—five months after Sandy and roughly eight months before Pizzarro "found" it by digging through garbage bags of Sandy debris—this memo book was produced during discovery in Kaleem v. City of New York, No. 12 Civ. 5525 (WFK) (RER) (E.D.N.Y.).

What is even more curious about Pizzarro's testimony is that when the memo book was produced in March 2013 in Kaleem, it was in pristine condition. See Exhibit E, Memo Book Cover Produced in Kaleem. Yet one year later, on March 3, 2014, when this very same memo book was produced again in the context of Justin Diaz v. City of New York, No. 12 Civ. 5525 (WFK) (RER) (E.D.N.Y.), its cover now appeared "storm damaged," with tears and water stains. See Exhibit F, Memo Book Cover Produced in Diaz.

Thus, it is clear that this memo book became "storm damaged" sometime between its March 2013 production in Kaleem and its March 2014 production in Diaz. As previously noted, Hurricane Sandy occurred in 2012. Compare Exhibit E (copy of the pristine memo book as produced in Kaleem), with Exhibit F (copy of the "storm damaged" memo book as produced in Diaz). It stands to reason that this memo book was intentionally "storm damaged" sometime around December 2013 in order to corroborate Pizzarro's story about Sandy washing it away.

When confronted in a deposition in the Kaleem case, Pizzarro testified that he had "no idea" how to explain the post-Sandy "damage" and would not answer questions about it. Later, Pizzarro speculated that the torn paper and water damage was actually just ordinary "wear and tear" from throwing it in his locker. See Exhibit G, Kaleem Deposition, pages 96-97. Pizzarro explained this theory by stating that:

> ….You're going to get rips because you keep shoving it in your pocket, you're shoving in them the lockers, it gets shuffled around with all sorts of equipment, clothing and all sorts of equipment, clothing and all sorts of stuff, it just might be a coffee spill, rai – who knows?  Exhibit G at 136-137.

Pizzarro's "wear and tear" testimony is incredible and likely another example of his tendency towards perjury, as it leaves unexplained why the memo book would be subjected to such shoving, shuffling, coffee and rain sometime after March 2013 when the memo book had already been closed out and rendered nothing more than a historical record as of December 2012.

Despite Plaintiff's requests, Defendants have refused to produce this memo book. Accordingly, Plaintiff requires physical production to examine the damage in greater detail and because the copy plaintiff possesses cuts off a significant portion of the cover.

### III. Conclusion

In light of the foregoing, Plaintiff respectfully requests that the Court order Defendants to produce both Pizzarro's complete personnel records and any previously undisclosed disciplinary records, as well as permit Plaintiff to physically inspect the memo book Pizzarro used between August 12, 2012 and December 13, 2012.

    Respectfully submitted,

    /s

    Robert Marinelli

cc:    ACC Tobias Zimmerman (By ECF)