# ROBERT MARINELLI
ATTORNEY
305 BROADWAY, SUITE 1001
NEW YORK, NEW YORK 10007
(212) 822-1427
Facsimile (212) 202-9646

May 11, 2016

**BY ECF**
Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Robert Cooper v. City of New York, et al.*, 14-CV-1761 (RJD) (RML)

Your Honor:

I am in receipt of Defendants' Responses and Objections to Plaintiffs' **Second** Set of Interrogatories and Requests for Production of Documents, and I write to request that Your Honor compel the production of certain necessary documents. I regret having to involve the Court in this matter.

I respectfully request that any conference scheduled in connection with this motion be held in person.[1]

I. **Plaintiff Has Made A Good Faith Effort To Informally Resolve This Discovery Dispute With Defendants, To No Avail**

I have sought to confer in good faith with Defense Counsel in order to resolve this dispute without seeking the Court's intervention, to no avail. In particular, on April 25, 2016, I provided Defendants with a detailed letter explaining Plaintiff's position on missing discovery documents. I subsequently wrote and called Defendants to inquire about a response.

On May 6, 2016, the Parties had a roughly thirty-minute telephone meeting to

---

[1] As the Court may remember, the Parties' most recent telephone conference was unfortunately marred by comments drifting towards the personal. I hope that an in-person appearance will inspire more decorous behavior from the Parties, which can only improve our professional productivity so as to limit our need to take away the Court's time.

discuss the April 25, 2016 letter. Unfortunately, during that conversation, Defendants adopted a blanket refusal to discuss or consider that Plaintiff might be entitled to any of the contested documents. It was an uncomfortable discussion. At one point Defendants responded that extra time would make no difference to their position because they were not required to do "your [plaintiff's] job". Unfortunately, I cannot do that alone as the records reside in Defendants' exclusive possession.

In that conversation I offered Defendants until May 13, 2016 to produce documents responsive to my deficiency letter or to present contrary argument discussing one document or another with specificity. On May 8, 2016, I emailed Defendants and explained that I believed that an immediate judicial application would be most efficient. Given Defendants' failure to respond to prior motions, Plaintiff doubted that Defendants would provide a timely, or any, response. Three business days have since passed since I informed Defendants of my intention to make this motion and Defendants have not responded. I thus have no choice but to interpret their silence as their answer.

## II. The Missing Documents Are By Definition Relevant And Proportional Because NYPD Policy Required That They Be Created In Connection With Plaintiff's Arrest, Investigation And Prosecution

As I explain below, the documents that Defendants have failed to produce should have been produced long ago, as Defendants created them to document Plaintiff's arrest and the ensuing investigation. To the extent Defendants might argue that these records are not "proportional" to the needs of the case (which is the only hypothetical withholding argument I gleaned from the Parties' May 6, 2016 telephone conversation), I can only respond that the records are by their very definition proportional because an NYPD policy ordered their production upon Plaintiff's arrest and prosecution.

### a. Defendants Have Failed To Identify A Supervising Officer On The Scene

Defendants previously produced a Sprint Report which indicates that a Sergeant from the 60th Precinct was present for Plaintiff's arrest. This Sergeant has not been identified. To ascertain all Parties present at the scene, Plaintiff requires all Roll Call documents which will help to identify Sergeant #1, the unidentified Sergeant that was on the scene of the arrest of Robert Cooper. These documents include:

- Roll Call, Daily Vehicle Assignment Sheet (PD120-141), and Roll Call Adjustment for the Third Platoon for P.S.A 1, the 60th Precinct, and the

Emergency Services Unit. In order to identify the on-scene Sergeant, these three documents are needed from each of these three precincts/units for January 12, 2012.

- Copies of the PSA 1 Interrupted Patrol Log for the Third Platoon for January 12, 2012.

- Recordings of radio transmissions by N.Y.P.D as well as 911 calls made in regard to the arrest of Robert Cooper on January 12, 2012.

- Video or still images from NYPD Viper cameras of the incident.

### b. Defendants Have Failed To Identify An Officer Integral To Officer Pizzarro's Perjury And Fabrication Of Evidence Relating To His Memo Book

The Court will recall that in this case, Officer Pizzarro perjured himself and fabricated evidence relating to his memo book in the underlying matter. This is an important part of Plaintiff's case yet Defendants have refused to provide easily identifiable information to aid Plaintiff in identifying a PSA 1 Officer who, according to Officer Pizzarro, is a major character in this chapter of the story. As a consequence, Plaintiff has an outstanding document request for:

- Roster of all personnel assigned to PSA 1 covering the period when Officer Pizzarro found his memo book –November 24 2013 – to identify the Officer who directed him to the location of his Memo book – "Something with CJT" which he could not pronounce (DEF 329).

### c. Defendants Have Failed To Produce The Following Memo Book Entries

- Memo Book entries for 60 Precinct/PSA1/Emergency Unit Sergeant #1 on the scene of the arrest of Robert Cooper, pending identification by the Roll Calls.

- Memo Book entries for 60 Precinct Sector G on the scene of the arrest of Robert Cooper, pending identification by the Roll Calls.

- Memo Book entries for both Emergency Service Officers on the scene. One is identified as Officer Chris Lindsey in Officer Taylor's testimony (DEF146).

- Memo Book entries for Officer Rachel Connor, Tax # 925133, who was assigned to the PBBS Evidence Collection Team.

- Unredacted and legible copy of Officer Walsh's Memo Book (D16). In addition, there are portions of the memo book, which have been redacted with no explanation. There also appears to be something written above the first entry on the page (20:55 hours) which is not included in the photocopy.

   d. **Defendants Have Refused To Produce Documents Regarding The Arrest Of Robert Cooper**

- Command Log Entries for PSA 1, on January 12, 2012 and January 13, 2012.

- Emergency Services Unit Report, as well as any other paperwork prepared by ESU which was produced for the Mapp Hearing (as referenced in Defendants' disclosures).

- Stop Question and Frisk Report (as referenced in Defendants' disclosures.)

   e. **Defendants Have Refused To Produce Ballistic And DNA Information That Has Been Pending For Over A Year**

Although Plaintiff has only recently been able to identify some of the above-described documents through study of Defendants' paper discovery and deposition testimony to date, Plaintiff identified still other outstanding discovery over one year ago and is still waiting for Defendants to produce related documents.

For example, on April 6, 2015 Plaintiff made document requests (a copy of the entire, unexcerpted document appears at Exhibit A) which might for ease of conversation be collectively described as seeking ballistic and DNA information. The subject document requests are:

**DOCUMENT REQUEST NO. 33:**

All documents identified in the foregoing interrogatories, including any document produced by the ESU, OCME and/or any New York City Forensic examination agency.

**DOCUMENT REQUEST NO. 34:**

Produce all documents relevant to this action that are or were in the possession of any agency of the City of New York, including but not limited to the ESU and/or any New York City Forensic examination agency and/or the NYC Office of Chief Medical Examiner or that reflect the

activities of any employee of the City of New York that are relevant to this action and can be obtained by defendants. If defendants claim that any document identified in response to this request cannot be produced or obtained, defendants are to treat this request as an interrogatory and are to state the existence, custodian, location and a general description of the document (see Local Civil Rule 33.3(a)).

### DOCUMENT REQUEST NO. 35:

Produce all photographs and other audio-visual materials documenting any examination or testing of evidence done by the City of New York, including but not limited to the ESU, OCME or that reflect the activities of any employee of the City of New York.

In addition to Defendants' boiler-plate objections to Plaintiff's requests for these documents, Defendants recognized the centrality of these records to Plaintiff's arrest and the subsequent investigation and prosecution by averring that they they would "search for information responsive to this request and w[ould] seasonably supplement this response if and when additional, relevant information becomes readily available."

Defendants have not conducted any such search. The proof is that they have not produced any of the documents that are plainly responsive to the ballistics and DNA discovery requests and which are commonly created in a case like this. This is a particularly egregious omission with respect to Defendants' discovery obligations. The missing Firearm and DNA documents are not obscure records—in fact, I have myself received them in the past and I am confident that the Court may be familiar with at least a handful of them from its own experience presiding over cases like this one. Yet they are missing. These documents include, but are not limited to:

- Firearms Investigation Worksheet (PD324-152).

- Gun Enhancement Checklist (PD324-060).

- Finest printout of the NYSPIN / NCIC inquiry of the firearm.

- Report by the Police Laboratory regarding the operability of the firearm as well as any other reports prepared by the Police Laboratory.

- Complaint Follow-Up Informational (PD313-081A) detailing the interview of the arresting Officer(s) and Mr. Cooper prepared by the Detective Bureau.

- Firearms trace report conducted by the Bureau of Alcohol Tobacco and Firearms.

- Property transfer report for the DNA swab taken from the firearm on the date of arrest, January 12, 2012, Invoice # 3000017854.

- Chain of Custody for DNA swab from the firearm, Invoice # 3000017854.

- Request For Laboratory Examination for the DNA swab of the firearm, Invoice # 3000017854.

- Property transfer report for the DNA swab of Mr. Cooper, Invoice # 3000108921 taken on August 9, 2012.

- Chain of Custody for DNA swab of Mr. Cooper, Invoice # 3000108921 taken on August 9, 2012.

- Chain of Custody for DNA swab taken from Mr. Cooper, Invoice # 3000108921 taken on August 9, 2012.

- Court Order for DNA testing of Mr. Cooper.

- DNA Reports comparing DNA taken from Mr. Cooper to DNA removed from the firearm.

**Conclusion**

In light of the foregoing, Plaintiff respectfully moves the Court for an Order directing Defendants to produce responsive discovery documents as detailed in these pages.

Yours truly,

/ss/

Robert Marinelli