

**ZACHARY W. CARTER**
Corporation Counsel

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

TOBIAS E. ZIMMERMAN
phone: (212) 356-2661
fax: (212) 356-3509
tzimmerm@law.nyc.gov

March 7, 2017

**VIA ECF & HAND DELIVERY**
Honorable Raymond J. Dearie
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Robert Cooper v. City of New York, et al.
                14-CV-1761 (RJD) (RML)

Your Honor:

      I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department, and the attorney assigned to represent Defendants in the above-referenced matter. Defendants write to request a pre-motion conference on Defendants' anticipated motion for summary judgment.

      **Factual Background**

      On January 12, 2012, the three individual police officers—Michael Walsh, Jermaine Taylor, and Angelo Pizzarro—were assigned to Police Service Area #1, which is part of the Housing Bureau of the New York City Police Department (NYPD).[1] At approximately 7:00 p.m. the three officers were in an unmarked van; Officer Pizzarro was driving. Pizzarro turned into the parking lot of the Gravesend Houses (a NYCHA complex) in Coney Island. At that time, they saw a group of four to six young men standing in the courtyard. Officer Pizzarro claims that he saw that one of those individuals—Plaintiff Robert Cooper—in possession of a firearm, and alerted the other officers as to what he had seen.[2] A foot pursuit ensued, with Officers Walsh and Taylor chasing plaintiff around the block, during which they saw Plaintiff toss a firearm. One of the pursuing officers notified Officer Pizzarro about the firearm; Pizzarro

---

[1] Each of the officers was subsequently promoted: Walsh to Detective 3rd grade, Taylor to Sergeant, and Pizzarro to Detective Specialist. They are referred to herein by the ranks at the time of the incident. Only Pizzarro is still assigned to PSA#1.

[2] There is a dispute of fact as to precisely what Pizzarro saw, but that is not material to Defendants' proposed motion, as discussed below.

went to that location, spotted the gun lying in the grass between the sidewalk and building, and stood over it. Meanwhile, Officers Walsh and Taylor we able to catch Plaintiff and take him into custody. The firearm was secured and vouchered as evidence; it was later found to be unloaded and inoperable.

Plaintiff was charged with Criminal Possession of a Firearm in the 4th Degree, a misdemeanor, and arraigned the following day. Officer Taylor was the arresting officer, and the one who conveyed the information the Kings County District Attorney's Office (KCDA) used to draft the criminal complaint. Plaintiff spent approximately a week in custody before he was released on bail.

In November 2013—nearly two years after the arrest—the criminal court held a *Mapp/Dunway* hearing to consider Plaintiff's motion to suppress the firearm. Officer Pizzarro testified that he had seen Plaintiff with the gun, giving rise to the chase; Officer Taylor testified that he heard Pizzarro's exclaim upon seeing the gun, that he (Taylor) and Officer Walsh chased Plaintiff on foot and saw him toss the gun. The court denied the suppression motion.

Shortly thereafter, Plaintiff's criminal defense attorney obtained a copy of Officer's Pizzarro's memobook, which Pizzarro had claimed was lost, possibly during Hurricane Sandy. The copy obtained by Plaintiff's attorney had been produced in civil litigation after the storm, thereby calling into question the veracity of Pizzarro's testimony. The criminal court reopened the suppression hearing, and on December 5, 2013, Officer Pizzarro tried (unsuccessfully) to explain the discrepancy between his previous testimony and the existence of the memobook. Describing Pizzarro's testimony as "bizarre and implausible", the criminal court found that it could no longer rely on his description of seeing Plaintiff with the gun. Without that basis, the officers had no lawful reason to pursue Plaintiff, and therefore the gun was the fruit of that unlawful chase and had to be suppressed. As a result, on December 12, 2013, KCDA moved to dismiss the criminal case, bringing the prosecution to an end.

### Plaintiff's Prior Settlement With The City

Meanwhile, on September 18, 2013, two months before the suppression hearing, Plaintiff entered into a settlement agreement with the City of New York in the case *Robert Cooper v. City of New York, et al*, No. 13-CV-0325 (JG) (RER). That case, was filed on January 18, 2013, and concerned an arrest that occurred on September 6, 2012. Plaintiff was represented in that earlier case by the same attorney representing him here. As part of that previous settlement, Plaintiff delivered to the City a "GENERAL RELEASE", in which he

> release[d] and discharge[d] the defendants, City of New York,. . . and all past and present officials, employees, representatives and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from **any and all liability, claims, or rights of action alleging a violation of my civil rights** and any and all related state law claims, **from the beginning of the world to the date of this General Release**, including claims for costs, expenses, and attorneys' fees."

General Release dated September 9, 2013 (emphasis added).  A copy of the General Release is annexed hereto as Exhibit "A".  Plaintiff received the consideration for this release, and has admitted that it is legally binding.

### Defendants' Anticipated Motion[3]

Plaintiff filed his Complaint herein on March 17, 2014, naming the City and the three Defendant police officers.  In that Complaint, Plaintiff alleges only federal claims under 42 U.S.C. § 1983.  Specifically, Plaintiff claims: (1) Unlawful Stop and Search; (2) False Arrest; (3) Failure to Intervene; (4) Malicious Prosecution; (5) Denial of Constitutional Right to Fair Trial; (6) Malicious Abuse of Process; and (7) municipal liability under *Monell v. Dep't of Social Servs. Of the City of New York*, 436 U.S. 658 (1978).  *See generally* Complaint (docket no. 1) at pp. 5–27.[4]

Defendants contend that the prior release clearly extinguishes Plaintiff's claims for unlawful search and seizure, false arrest, failure to intervene, and abuse of process, as all of those claims unequivocally "allege[] a violation of [Plaintiff's] civil rights" occurring prior to the execution of the General Release on September 9, 2013.  "[C]ourts in this Circuit have consistently concluded that similarly phrased releases between federal civil rights claimants and the City of New York bar suit against the City and its employees for alleged conduct predating the release."  *Staples v. Acolatza*, 2016 U.S. Dist. LEXIS 153764, at *7 (S.D.N.Y. March 9, 2016) (Pauley, J.) (collecting cases).

Defendants further contend that the previous settlement also precludes Plaintiff from asserting either malicious prosecution or a denial of his right to fair trial on the basis of any conduct that occurred prior to the release.  In other words, Defendants believe that Plaintiff must base any surviving claims solely upon acts or omissions that occurred at the suppression hearing in November and December 2013.  Defendants expect to show that the actions of the Defendant officers at those hearings were insufficient to support any of the claims against them.  Defendants will also argue that Plaintiff cannot establish a sufficient deprivation of liberty after September 9, 2013, to support a claim under the Fourth Amendment.  At the very least, Plaintiff's damages on any remaining claims would be limited to harms accruing after he signed the General Release.

Finally, Defendants will argue that Plaintiff has not adduced any evidence to support his *Monell* claim directly against the City.

For the foregoing reasons, Defendants respectfully request that the Court schedule a pre-motion conference on Defendants' anticipated motion for summary judgment.

---

[3] Defendants reserve their right to raise additional arguments in the actual motion.

[4] Plaintiff's "First Claim" generically alleges violations of Plaintiff's "Fourth, Fifth and Fourteenth Amendment" rights under § 1983, which does not state a separate cause of action.

- 4 -

Defendants thank the Court for its attention to this matter.

Respectfully submitted,

Tobias E. Zimmerman
*Senior Counsel*
Special Federal Litigation Division

cc:   Robert Marinelli Esq. **(via ECF)**
       *Attorney for Plaintiff*