UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT COOPER,

                                        Plaintiff,

            -against-                                   No. 14-CV-1761 (RJD) (RML)

THE CITY OF NEW YORK; Police Officer
MICHAEL WALSH, Tax No. 945089; Police
Officer JERMAINE TAYLOR, Tax No. 937613;
Police Officer ANGELO PIZZARRO, Shield
No. 29275; and Police Officers JOHN and JANE
DOE 1 through 10, individually and in their
official capacities (the names John and Jane Doe
being fictitious, as the true names are presently
unknown),

                                        Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ZACHARY W. CARTER
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants City of New York, Walsh, Taylor, and
Pizzarro*
100 Church Street
New York, New York 10007

            By:    Tobias E. Zimmerman
                   *Senior Counsel*
                   Special Federal Litigation Division
                   (212) 356-2661

Dated July 22, 2017

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES** ............................................................................. ii

**PRELIMINARY STATEMENT** ......................................................................1

**STATEMENT OF FACTS** ...............................................................................1

**LEGAL STANDARD** .......................................................................................5

**ARGUMENT** .....................................................................................................6

> **POINT I**
> THE PRIOR SETTLEMENTS COVER ALL ACTS BY THE
> DEFENDANTS PRIOR TO SEPTEMBER 2013 ...............................7
>
>> A. The Prior Settlements Are Enforceable And Unambiguously Bar
>> All Claims Alleging A Violation Of Plaintiff's Civil Rights Before
>> The Release Date ...........................................................................8
>>
>> B. The *Cooper III* General Release Bars Virtually Every Claim In
>> This Action ...................................................................................11
>
> **POINT II**
> THE OFFICERS' TESTIMONY AT THE SUPPRESSION
> HEARING CANNOT SUPPORT A CLAIM FOR DENIAL OF
> RIGHT TO A FAIR TRIAL ...........................................................15
>
> **POINT III**
> PLAINTIFF HAS NOT PLEADED OR ESTABLISHED A
> COLLATERAL OBJECTIVE SUPPORTING HIS ABUSE OF
> PROCESS CLAIM ........................................................................19
>
> **POINT IV**
> THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ...................20
>
> **POINT V**
> PLAINTIFF HAS NOT ADDUCED EVIDENCE SUPPORTING
> HIS *MONELL* CLAIM ..................................................................22

**CONCLUSION** ...............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Creighton*
483 U.S. 635 (1987)................................................................................20

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)..................................................................................6

*Arrington v. City of New York*
628 F. App'x 46 (2d Cir. 2015) ...............................................................19

*Briscoe v. Lahue*
460 U.S. 325 (1983)................................................................................18

*Brown v. Eli Lilly & Co.*
654 F.3d 347 (2d Cir. 2011)...............................................................6, 22

*Buie v. City of New York*, No. 12-CV-4390 (RJD) (CLP)
2015 U.S. Dist. LEXIS 147642 (E.D.N.Y.).............................................18

*City of Los Angeles v. Heller*
475 U.S. 796 (1986)................................................................................22

*Coggins v. Buonora*
776 F.3d 108 (2d Cir. 2015).....................................................................19

*Collins v. Harrison-Bode*
303 F.3d 429 (2d Cir. 2002)......................................................................8

*Coollick v. Hughes*
699 F.3d 211 (2d Cir. 2012)......................................................................6

*Coward v. City of New York*, No. 16-CV-4848 (FB)
2017 U.S. Dist. LEXIS 107556 (E.D.N.Y. July 12, 2017) .................9, 10

*D'Amico v. City of New York*
132 F.3d 145 (2d Cir. 1998).....................................................................21

*Daloia v. Rose*
849 F.2d 74 (2d Cir. 1988).......................................................................18

*De Santis v. City of New York*
2011 U.S. Dist. LEXIS 99126 (S.D.N.Y.).................................................19

*Delamota v. City of New York*
2017 U.S. App. LEXIS 4962 (2d Cir. Mar. 21, 2017).............................16

## TABLE OF AUTHORITIES
**(cont.)**

Page(s)

*Duamutef v. Morris*
    956 F. Supp. 1112 (S.D.N.Y. 1997)......................................................................13

*Escalera v. Lunn*
    361 F.3d 737 (2d Cir. 2004)................................................................................20

*Farid v. Ellen*
    593 F.3d 233 (2d Cir. 2010)................................................................................17

*Farrell v. Burke*
    449 F.3d 470 (2d Cir. 2006)................................................................................17

*Garnett v. Undercover Officer C0039*
    838 F.3d 265 (2d Cir. 2016)................................................................................15

*Gerstein v. Pugh*
    420 U.S. 103 (1975)............................................................................................16

*Henderson v. Town of Greenwich*
    317 F. App'x 46 (2d Cir. 2009) ..........................................................................23

*Horvath v. City of New York*, No. 12-CV-6005 (RJD) (JMA)
    2015 U.S. Dist. LEXIS 51029 (E.D.N.Y.)..........................................................18

*Hunter v. Bryant*
    502 U.S. 224 (1991)............................................................................................20

*Jenkins v. City of New York*
    478 F.3d 76 (2d Cir. 2007)..................................................................................23

*Jovanovic v. City of New York*
    486 F. App'x 149 (2d Cir. 2012) ........................................................................18

*Levine v. Board of Educ.*
    1998 U.S. App. LEXIS 13174 (2d Cir. 1998) ......................................................8

*Lewis v. City of New York*
    591 F. App'x 21 (2d Cir. 2015) ..........................................................................17

*Lewis v. City of New York*, No. 10-CV-3266 (RJD) (LB)
    2011 U.S. Dist. LEXIS 83289 (E.D.N.Y.)........................................................8, 11

*Llovet* v. *Chicago*
    761 F. 3d 759 (7th Cir. 2014) ............................................................................16

*Lloyd v. City of New York*
    2017 U.S. Dist. LEXIS 77716 (S.D.N.Y. May 22, 2017).......................................9

## TABLE OF AUTHORITIES
**(cont.)**

**Page(s)**

*Lopez v. City of New York*
    901 F. Supp. 684 (S.D.N.Y. 1995) ........................................................19

*Malley v. Briggs*
    475 U.S. 335 (1986)............................................................................20

*Manuel v. City of Joliet*
    137 S. Ct. 911 (2017)....................................................................16, 17

*Marvel Characters v. Simon*
    310 F.3d 280 (2d Cir. 2002)...............................................................14

*Matthews v. City of New York*
    889 F. Supp. 2d 418 (E.D.N.Y. 2012) ................................................18

*Miles v. City of Hartford*
    445 F. App'x 379 (2d Cir. 2011) .........................................................19

*Monell v. Dep't of Social Servs. of the City of New York*
    436 U.S. 658 (1978).............................................................14, 22, 23

*Morris-Hayes v. Bd. of Educ.*
    423 F.3d 153 (2d Cir. 2005)..................................................................6

*Muhammad v. Schriro*
    2014 U.S. Dist. LEXIS 132201 (S.D.N.Y.) ..........................................9

*Murphy v. Lynn*
    118 F.3d 938 (2d Cir. 1997)...............................................................12

*Nicholas v. City of New York*
    2017 U.S. Dist. LEXIS 89842 (S.D.N.Y. June 12, 2017)................9, 10

*Oklahoma City v. Tuttle*
    471 U.S. 808 (1985)........................................................................7, 23

*Oliveira v. Mayer*
    23 F.3d 642 (2d Cir. 1994)..................................................................20

*Pampillonia v. RJR Nabisco, Inc.*
    138 F.3d 459 (2d Cir. 1998)..................................................................8

*Pearson v. Callahan*
    555 U.S. 223 (2009)............................................................................20

*Rehberg v. Paulk*
    566 U.S. 356 (2012)............................................................................18

## TABLE OF AUTHORITIES
**(cont.)**

**Page(s)**

*Ricciuti v. N.Y.C. Transit Auth.*
    124 F.3d 123 (2d Cir. 1997).................................................................15, 16, 17

*Savino v. City of New York*
    331 F.3d 63 (2d Cir. 2003)...................................................................19

*Smith v. Doe*, No. 15-CV-0245 (SLT) (RER)
    2016 U.S. Dist. LEXIS 151433 (E.D.N.Y. Oct. 31, 2016).................9, 10

*Staples v. Officer Acolatza*
    2016 U.S. Dist. LEXIS 153764 (S.D.N.Y.) ..........................................9

*Storey v. Cello Holdings, L.L.C.*
    347 F.3d 370 (2d Cir. 2003)...................................................................14, 15

*Tromp v. City of New York*
    465 F. App'x 50 (2d Cir. 2012) .............................................................10, 11

*Twine v. Four Unknown N.Y. Police Officers*
    2012 U.S. Dist. LEXIS 176048 (S.D.N.Y.) ..........................................11

*Windsor v. United States*
    699 F.3d 169 (2d Cir. 2012)...................................................................6

*Ying Li v. City of New York*, No. 15-CV-1599 (PKC)
    2017 U.S. Dist. LEXIS 49267 (E.D.N.Y. Mar. 31, 2017) .....................13

*Zahrey v. Coffey*
    221 F.3d 342 (2d Cir. 2000)...................................................................15

**State Cases**

*Hauser v. Bartow*
    273 N.Y. 370 (1937) .............................................................................19

*Henriques v. Linville*
    924 N.Y.S.2d 309 (Sup. Ct. N.Y. Cnty. 2011) .....................................13

*Skluth v. United Merchs. & Mfrs., Inc.*
    163 A.D.2d 104, 559 N.Y.S.2d 280 (1st Dep't 1990) .............................8

*Town of Newfane v. Gen. Star Nat'l Ins. Co.*
    14 A.D.3d 72, 784 N.Y.S.2d 787 (4th Dep't 2004)...............................12

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of New York and Police Officers Michael Walsh, Jermaine Taylor, and

Angelo Pizzarro,[1] by their attorney, Zachary W. Carter, Corporation Counsel of the City of New

York, respectfully submit this Memorandum of Law in support of their motion for summary

judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Robert Cooper brought this lawsuit despite the fact that he has already waived

his right to collect on the claims asserted.  In fact, he has released his claims in this case not

once, not twice, but three times.  Three separate times Plaintiff signed a "General Release" in

favor of the City and its employees, expressly waiving his right to collect any damages for viola-

tions of his civil rights that had already occurred.  Yet, in this action he alleges violations of his

civil rights that occurred prior to all three of those releases.  The City paid Plaintiff  $25,000 to

buy peace, and in exchange it got this lawsuit.  Not only should the claims be dismissed, the City

ought to get its money back.  But even if Plaintiff had not already settled his claims, the Defend-

ants would be entitled to summary judgment on the merits.

## STATEMENT OF FACTS

On January 12, 2012, the three individual Defendants were assigned to Police Service

Area #1, which is part of the Housing Bureau of the New York City Police Department.  *See* Ex-

hibit B, Transcript of 10/08/15 Deposition of A. Pizzarro ("Pizzarro Dep.") at 28:08–29:09.[2]  At

---

[1] Each of the officers was subsequently promoted: Walsh to Detective 3rd grade, Taylor to Ser-
geant, and Pizzarro to Detective Specialist.  They are referred to herein by their ranks at the time
of the events at issue.

[2] All of the Exhibits cited herein are annexed to the Declaration of Tobias E. Zimmerman dated
July 22, 2017 filed contemporaneously in support of this motion.

approximately 7:00 p.m. the three officers were in an unmarked van driven by Officer Pizzarro. Exhibit C, Transcript of 07/20/16 Deposition of J. Taylor ("Taylor Dep.") at 08:18–10:08. Pizzarro turned into the parking lot of the Gravesend Houses, a NYCHA complex in Coney Island. *Id.* at 10:05–10:20. At that time, they saw a group of four to six young men standing in the courtyard. *Id.* at 13:02–12. As the van approached the group, Officer Pizzarro suddenly alerted the other two officers that one of the men had a gun. *See* Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1") , at ¶ 1. A foot pursuit ensued, with Officers Walsh and Taylor chasing plaintiff around the block. *See* Defs.' 56.1 at ¶¶ 2–3; Ex. C, Taylor Dep. at 28:05–34:20, 40:05–49:14; Exhibit D, Transcript of 08/04/16 Deposition of M. Walsh ("Walsh Dep.") at 43:22–46:23, 49:17–55:08; Exhibit E, Transcript of 03/04/15 Deposition of Plaintiff R. Cooper ("Pl.'s Dep.") at 10:19–16:16. During the chase, Plaintiff threw away his black scarf and it landed in the grass. Defs.' 56.1 at ¶ 4. Officers Walsh and Taylor saw Plaintiff throw something, and believed it might be a firearm. *See* Defs.' 56.1 at ¶ 5. Officer Walsh used his tactical radio to alert other officers that Plaintiff had tossed an object. Defs.' 56.1 at ¶ 6. Officer Pizzarro heard that radio call and went to the indicated location. Defs.' 56.1 at ¶ 7. When he got to the indicated location, Pizzarro quickly spotted a gun lying in the grass between the sidewalk and the building. Defs.' 56.1 at ¶ 8. He cordoned off the area and guarded the firearm. Ex. B, Pizzarro Dep. at 55:11–56:16. Meanwhile, Officers Walsh and Taylor finally caught up to Plaintiff and took him into custody. Ex. C, Taylor Dep. at 48:16–49:14. The firearm was secured and vouchered as evidence. *Id.* at 71:13–72:09. Later testing determined the firearm was inoperable. *See* Exhibit H, NYPD Police Laboratory Report (DEF0498).

Officer Taylor was the arresting officer, and the one who conveyed the information that Kings County District Attorney's Office (KCDA) used to draft the Criminal Complaint. *See*

Defs.' 56.1 at ¶ 10.  Plaintiff was charged with Criminal Possession of a Firearm in the 4th De-

gree, a misdemeanor, and arraigned on January 14, 2012.  *See* Defs.' 56.1 at ¶ 11.  Plaintiff spent

approximately a week in custody before he was able to make bail.  Defs.' 56.1 at ¶ 12.  He was

therefore released from custody on or about January 20, 2013.

      In November 2013—nearly two years after the arrest—the criminal court held a

*Mapp/Dunway* hearing to consider Plaintiff's motion to suppress the firearm.  *See* Ex. A, Compl.

at ¶ 24; Defs.' 56.1 at ¶ 13.  Officers Taylor and Pizzarro testified at that hearing.; Officer Walsh

did not testify.  *See* Defs.' 56.1 at ¶¶ 13–14.  Based on that testimony, the court denied the sup-

pression motion.  Defs.' 56.1 at ¶ 15.

      Shortly thereafter, Plaintiff's criminal defense attorney obtained a copy of Officer's Piz-

zarro's memo book, which Pizzarro had claimed was lost, possibly during Hurricane Sandy.  *See*

Exhibit J, Decision and Order, *People v. Robert Cooper*, No. 2012KN003462 (Kings Cnty. Crim.

Ct. Dec. 12, 2013) ("Grasso Order II").  The criminal court reopened the suppression hearing

and, on December 4, 2013, Officer Pizzarro tried (unsuccessfully) to explain the discrepancy be-

tween his previous testimony and the existence of the memo book.  *See generally id.*; Defs. 56.1

at ¶ 16.  Describing Pizzarro's testimony as "bizarre and implausible", (Ex. J, Grasso Order II at

8), the criminal court found that it could no longer rely on Pizzarro's assertion that he saw Plain-

tiff with the gun prior to the pursuit.  *Id*. at 10.  Without that basis, the court held, the officers had

no lawful reason to pursue Plaintiff, and therefore the gun was the fruit of that unlawful chase

and had to be suppressed.  *Id.* at 15–17.  As a result, on December 16, 2013, KCDA moved to

dismiss the criminal case, bringing the prosecution to an end.  *See* Defs.' 56.1 at ¶ 18.

**<u>Plaintiff's Prior Civil Suits Against The City</u>**

This is the fourth civil rights lawsuit Plaintiff has filed in this Court against the City of New York and members of NYPD.  Each of the three previous cases was resolved through settlements in which Plaintiff broadly released the City and its employees from liability based on past violations of his civil rights.  Each of those settlements was executed after January 14, 2012, and each of them therefore covered Plaintiff's arrest and attendant claims in this case.

Plaintiff's first case arose out of an arrest on April 1, 2007, and was filed on January 28, 2011.  *See* Defs.' 56.1 at ¶ 19; Exhibit L, Complaint, *Robert Cooper v. City of New York, et al.*, No. 11-CV-0452 (ENV) (JMA) (hereinafter "*Cooper I*"), at ¶ 9.[3]  Eight months later, while *Cooper I* was still pending, Plaintiff filed a second lawsuit alleging damages arising out of three arrests that occurred in 2009 and 2010.  *See* Defs.' 56.1 at ¶ 20; Exhibit O, Complaint, *Robert Cooper v. City of New York, et al.*, No. 11-CV-4873 (SJ) (RER) (hereinafter "*Cooper II*"), at ¶ 9.  Plaintiff was represented by counsel—although not his present attorney—in both *Cooper I* and *Cooper II*.  *See* Ex. L, *Cooper I* Complaint; Ex. O, *Cooper II* Complaint.  Moreover, Defendant Jermaine Taylor was one of the named defendants in *Cooper II*.  *See* Defs.; 56.1 at ¶ 21.  Both *Cooper I & II* included claims for municipal liability, alleging that Plaintiff's rights were violated due to the City's "actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning . . . [the] obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons".  Ex. L, *Cooper I* Complaint at ¶ 22 *and* Ex. O, *Cooper II* Complaint at ¶ 28.

---

[3] The statute of limitations would have been tolled owing to the fact that Plaintiff was a minor at the time of the arrest.

On or about February 24, 2012—six weeks after the arrest at issue in this case—Plaintiff settled both *Cooper I & II* for a total of $18,500 ($9,250 per case).  *See* Defs.' 56.1 at ¶ 22.  As a condition of those settlements, Plaintiff executed two identical General Releases on February 28, 2012, each of which broadly released the City and its employees from any and all liability arising out of prior violations of his civil rights.  *See* Defs.' 56.1 at ¶ 23; Exhibit N, *Cooper I* General Release; Exhibit Q, *Cooper II* General Release.

Plaintiff was arrested again on September 6, 2012, and subsequently filed suit relating to that arrest on January 18, 2013.  *See* Defs.' 56.1 at ¶ 24; Exhibit R, Complaint, *Robert Cooper v. City of New York, et al.*, No. 13-CV-0325 (JG) (RER) (hereinafter "*Cooper III*"), at ¶ 12.[4]  Plaintiff was represented in *Cooper III* by the same competent attorney who is Plaintiff's counsel herein.  *See* Defs.' 56.1 at ¶ 25.  Nine months later, in September 2013—and about two months before the suppression hearing in this case—Plaintiff and the City agreed to settle *Cooper III* for $6,500.  *See* Defs.' 56.1 at ¶ 26; Exhibit S, *Cooper III*, Stipulation of Settlement dated September 18, 2013, at ¶ 2.  As part of that settlement, Plaintiff executed a new General Release dated September 9, 2013, and containing the same binding release as the ones he gave in *Cooper I & II*, once again discharging in broad terms any liability by the City and its employees.  *See* Defs.' 56.1 at ¶¶ 27–28; Exhibit T, *Cooper III* General Release.  Plaintiff filed this lawsuit six months later.  *See generally* Ex. A, Complaint.

## LEGAL STANDARD

Summary judgment must be granted whenever the movant can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of

---

[4] Evidence adduced in discovery shows that Plaintiff was arrested at least one other time between January and September 2012, but the City is not aware of any lawsuit arising from that arrest.

law." Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) (cleaned up).[5]  As the moving parties, Defendants have "the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [them] to judgment as a matter of law." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).  To avoid summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts," and he "may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (cleaned up).  On the undisputed facts in this case, Defendants are entitled to summary judgment.

## ARGUMENT

Plaintiff's Complaint[6] purports to state seven distinct claims under federal law.[7]  However, with one narrow exception discussed below, all of those claims are based on alleged viola-

---

[5] *See* Jack Metzler, *Cleaning Up Quotations* (March 17, 2017) (available at https://ssrn.com/abstract=2935374) (proposing and describing use of the "cleaned up" parenthetical in legal citations).

[6] For the Court's convenience, a copy of the Complaint dated March 17, 2014 is annexed as Exhibit "A" to the Zimmerman Declaration.

[7] Plaintiff's "First Claim", entitled simply "42 U.S.C. § 1983", appears to be a catchall that is duplicative of the other individual claims, rather than a separate and distinct cause of action.  *See* Ex. A, Compl. at ¶¶ 30–32; *see also, e.g.*, *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir. 2005) ("It is well-settled that § 1983 does not create a federal right or benefit; it simply pro-

(Continued)

- 6 -

tions of Plaintiff's civil rights that occurred prior to September 9, 2013—the date that Plaintiff signed the General Release in *Cooper III*.  That release extinguished liability for all previous acts by the Defendants that violated Plaintiff's civil rights.  Thus, of all of the potentially tortious acts alleged in the Complaint, only the officers' testimony at the suppression hearing in November and December 2013 remains at issue.  *See* Ex. A, Compl. at ¶¶ 24–28.  As discussed below, that testimony cannot support a claim against the Defendants.

Moreover, even if the prior releases did not clearly and unambiguously extinguish the bulk of the claims in this case, Defendants would nevertheless be entitled to summary judgment because Plaintiff's own testimony establishes that the officers had either actual or at least arguable probable cause to arrest and prosecute Plaintiff for possessing an illegal firearm, and that Plaintiff's other claims (*e.g.*, abuse of process, failure to intervene, etc.) cannot succeed for a variety of reasons.  Defendants are therefore entitled to summary judgment on all claims in the Complaint.

## POINT I

## THE PRIOR SETTLEMENTS COVER
## <u>ALL ACTS BY THE DEFENDANTS PRIOR TO SEPTEMBER 2013</u>

In February 2012 and again in September 2013, in exchange for monetary consideration he received, Plaintiff expressly

> release[d] and discharge[d] the . . . City of New York, . . . and all past and present officials, employees, representatives and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees."

---

vides a mechanism for enforcing a right or benefit established elsewhere." (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985))).

Exs. N, Q & T, *Cooper I–III* General Releases; *see also* Exs. M, P & S, *Cooper I–III* Stipulations of Settlement at ¶ 2.[8]  Nevertheless, six months after he executed the General Release in *Cooper III*, Plaintiff filed this lawsuit seeking damages for alleged violations of his civil rights that occurred prior to September 9, 2013.  It is—or ought to be—beyond cavil that Plaintiff cannot recover on claims that he has already settled, and that Defendants are therefore entitled to summary judgment on all such claims.

### A. The Prior Settlements Are Enforceable And Unambiguously Bar All Claims Alleging A Violation Of Plaintiff's Civil Rights Before The Release Date

As this Court has previously recognized, "[f]ederal courts have articulated a strong policy in favor of enforcing settlement agreements and releases."  *Lewis v. City of New York*, No. 10-CV-3266 (RJD) (LB), 2011 U.S. Dist. LEXIS 83289, at *20 (E.D.N.Y.) (quoting *Levine v. Board of Educ.*, 1998 U.S. App. LEXIS 13174, at *4–5 (2d Cir. 1998)).  Settlement agreements and releases are construed according to general principles of contract law.  *See, e.g., Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002).  Under New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) (citing *Skluth v. United Merchs. & Mfrs., Inc.*, 163 A.D.2d 104, 106, 559 N.Y.S.2d 280, 282 (1st Dep't 1990)).  There is no dispute that the settlement and release in *Cooper III* are valid and enforceable.  *See* Defs.' 56. at ¶¶ 24–27.  There is also no question that the three individual Defendants here—who were all employees of the City and who are represented by the Office of Corporation Counsel—are bene-

---

[8] The only relevant difference between the three releases is the date of execution.  Because each release was effective "from the beginning of the world to the date" of execution, the *Cooper III* General Release, which was executed last, is temporally broader than, and completely overlaps, the earlier ones.  Thus, for the sake of simplicity, the following discussion refers only to the settlement and release in *Cooper III* except where otherwise specifically noted.

ficiaries of the *Cooper III* release.[9]  And, finally, numerous courts have found the same language

used in the *Cooper III* Stipulation of Settlement and General Release to be "quite clear" and un-

ambiguous.  *Lloyd v. City of New York*, 2017 U.S. Dist. LEXIS 77716, at *5–8 (S.D.N.Y. May

22, 2017) (Sweet, J.); *see also Coward v. City of New York*, No. 16-CV-4848 (FB), 2017 U.S.

Dist. LEXIS 107556, at *1–2 (E.D.N.Y. July 12, 2017); *Smith v. Doe*, No. 15-CV-0245 (SLT)

(RER), 2016 U.S. Dist. LEXIS 151433, at *9 (E.D.N.Y. Oct. 31, 2016), *adopted by* 2016 U.S.

Dist. LEXIS 166503 (E.D.N.Y. Dec. 1, 2016); *and Nicholas v. City of New York*, 2017 U.S. Dist.

LEXIS 89842, at *5–6 (S.D.N.Y. June 12, 2017) (Oetken, J.).  All that is left is for the Court to

apply that "clear" language to the claims at issue.

Courts consistently find that this very same "language of the release—discharging '*any*

*and all* liability . . . 'from *the beginning of the world* to the date of [the] General release'—is

'unambiguous, and bars all claims arising out of past events.'"  *Coward*, 2017 U.S. Dist. LEXIS

107556, at *2 (quoting *Muhammad v. Schriro*, 2014 U.S. Dist. LEXIS 132201, at *11

(S.D.N.Y.)) (italics, ellipsis, and brackets in the original).[10]

> Since the events giving rise to the civil rights claims in this case occurred
> on [January 12, 2012], [Cooper] released those claims as part of the set-
> tlement agreement in [*Cooper III*], and he is barred from bringing them
> against the City and the police officers here.  Indeed, "courts in this Cir-
> cuit have consistently concluded that similarly phrased releases between
> federal civil rights claimants and the City of New York bar suit against the
> City and its employees for alleged conduct predating the release."

*Lloyd*, 2017 U.S. Dist. LEXIS 77716, at *7–8 (quoting *Staples v. Officer Acolatza*, 2016 U.S.

Dist. LEXIS 153764, at *7 (S.D.N.Y.) and collecting cases); *see also Smith*, 2016 U.S. Dist.

---

[9] Officer Taylor was also one of the "defendants" covered by the release in *Cooper II*.

[10] As noted by Judge Block, the release at issue in *Muhammad* was similar, but not identical to
the one at issue in *Coward* and now before the Court in this case.

LEXIS 151433, at *10–11 (the same release "is broadly constructed" and applies where "[t]he events that form the basis of the current action all predate the Release."); *Nicholas*, 2017 U.S. Dist. LEXIS 89842, at *5–6 (identical language was "clear" and released the City and its employees "from liability for all actions up until [the date of the release]") (Oetken, J.). Thus, any claim in this case that depends upon an allegation that Plaintiff's civil rights were violated on or before September 9, 2013, is barred by his execution of the *Cooper III* General Release on that day.

In his response to Defendants' pre-motion application, Plaintiff asserts that at least some of his claims survive the prior settlement because those claims did not "accrue until the criminal case was dismissed." *See* Letter dated March 17, 2017 (ECF No. 36-1), at 2. But Plaintiff is mistaken about the scope of the release he signed, which extends to "any and all *liability*"—not just "claims, *or* rights of action". Ex. T, *Cooper III* General Release (emphasis added); *see also Coward*, 2017 U.S. Dist. LEXIS 107556, at *2. Plaintiff therefore surrendered any and all "liability" the Defendants might have had—then or now—arising out of a prior violation of his civil rights, regardless of whether that liability had ripened into a fully justiciable *claim* by September 9, 2013. *See Smith*, 2016 U.S. Dist. LEXIS 151433, at *10 ("The Second Circuit has consistently held that '[w]ords of general release are clearly operative not only as to all controversies . . . which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existing controversies.'" (quoting *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) (brackets and ellipsis in original))). It is therefore irrelevant whether a claim had "accrued" at the time Plaintiff executed the General Release in *Cooper III*—rather, the operative question is whether a claim in this case "alleg[es] a violation of

[Plaintiff's] civil rights . . . from the beginning of the world to [September 9, 2013]".[11]   As discussed below, that covers all of Plaintiff's claims in this case to the extent they allege a violation of his constitutional rights prior to September 9, 2013.

### B.   The *Cooper III* General Release Bars Virtually Every Claim In This Action

Plaintiff was arrested on January 12, 2012, and his false arrest claim (Ex. A, Compl. at ¶¶ 36–38) is plainly covered by each of the releases he signed after that date.   Plaintiff's stop and search claim (Ex. A, Compl. at ¶¶ 33–35) also appears to be based strictly on events surrounding his arrest—at least, there has been no allegation or factual discovery identifying any 'stop' or 'search' by the Defendant officers that occurred after January 12, 2012—and that claim is therefore also barred by the release.   Defendants' are entitled to summary judgment on each of those claims.

Plaintiff's malicious prosecution claim (Ex. A, Compl. at ¶¶ 43–46) is also barred because it alleges a violation of his civil rights—an unconstitutional seizure—prior to the date that he signed the *Cooper III* General Release.   It is undisputed that Plaintiff was arraigned on January 14, 2012, and subsequently remanded to Rikers Island for approximately six days when he was unable to make bail.   *See* Defs. 56.1 at ¶¶ 11–12.   "[T]here can be no question that he [was] seized within the meaning of the Fourth Amendment" when he was "physically detained follow-

---

[11] Plaintiff's argument appears to be based on an earlier iteration of the City's standard settlement language, which only extended to "any and all claims which were or could have been alleged by [plaintiff] in the [prior] action."   *See, e.g.*, *Tromp*, 465 F. App'x at 52 (quoting a release signed in or about March 2011); *Lewis*, 2011 U.S. Dist. LEXIS 83289, at *5 (quoting similar language from a release given in February 2010).   Applying that older release sometimes required looking to "both federal joinder and venue law" to determine if a new claim "could have been alleged" in the previously settled case.   *Twine v. Four Unknown N.Y. Police Officers*, 2012 U.S. Dist. LEXIS 176048, at *24–25 (S.D.N.Y.).   No such analysis is necessary or appropriate here because the release at issue is the more recent version, which is no longer limited to "claims" that "were or could have been alleged" at the time of settlement.

- 11 -

ing arraignment". *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997). Plaintiff contends that this seizure was unsupported by probable cause, and therefore "unreasonable" under the Fourth Amendment. His malicious prosecution claim is therefore plainly "alleging a violation of [his] civil rights" in January 2012, well before he signed the General Release in *Cooper III* (not to mention the two earlier releases he signed only a few weeks after his release from Rikers).

Because the language of the General Release focuses on the timing of the alleged violation of Plaintiff's civil rights—and not on when the resulting malicious prosecution claim "could have been brought"—the favorable termination element inherited from the common law tort does not affect the scope of the release. *Cf. Town of Newfane v. Gen. Star Nat'l Ins. Co.*, 14 A.D.3d 72, 77–79, 784 N.Y.S.2d 787, 791–93 (4th Dep't 2004) (where an insurance policy spoke "not of the date upon which an action could have been brought or the damages fully ascertained, but of when the offense was committed", the operative date for a malicious prosecution claim was "the date of the commencement of the underlying criminal prosecution") (cleaned up). Reading the General Release to bar Plaintiff's malicious prosecution claim is not only supported by the plain language of that agreement, it is also consistent with how judges in the Eastern and Southern Districts have applied this same release. *See* cases cited above at pp. 8–9.

In the Complaint, Plaintiff's claim for "Malicious Abuse of Process" (Ex. A, Compl. at ¶¶ 52–56) is expressly alleged to arise from the *arrest*, and not from any other type of legal process. *See* Ex. A, Compl. at ¶ 53 ("defendants issued legal process to place Plaintiff under arrest."); *id.* at ¶ 54 (alleging that "defendants arrested Plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process."). As already discussed, since the arrest occurred on January 12, 2012, all claims arising from that event are barred by the General Release. However, in his opposition to Defendants' pre-motion application, Plaintiff appears to

suggest that the abuse of process claim is tied somehow to the criminal prosecution, because he claims (erroneously) that it "did not accrue until the criminal case was dismissed. . . ." ECF No. 36-1 at 2 (citing *Henriques v. Linville*, 924 N.Y.S.2d 309 (Sup. Ct. N.Y. Cnty. 2011)). But even if this claim is read to encompass the initiation of the criminal prosecution in criminal court, that occurred when the criminal complaint was filed the day after the arrest—and therefore still well before the release was signed. *See* Exhibit F, Criminal Complaint (DEF0018).

As explained above with respect to malicious prosecution, when Plaintiff's abuse of process claim "accrued" does not control whether it is barred by the release. Moreover, as even the case cited by Plaintiff acknowledges, an abuse of process claim only "sometimes" accrues upon termination of the criminal prosecution. *Henriques*, 924 N.Y.S.2d at 309. *Compare Ying Li v. City of New York*, No. 15-CV-1599 (PKC), 2017 U.S. Dist. LEXIS 49267, at *55–56 (E.D.N.Y. Mar. 31, 2017) ("A claim for abuse of process accrues 'at such a time as the criminal process is set in motion—typically at arrest—against the plaintiff . . . [or at] such time as plaintiff is aware, or ought to be aware, of those facts providing a basis for his claim.'" (quoting *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.))).

Plaintiff's "Right to Fair Trial" claim (Ex. A, Compl. at ¶¶ 47–51) is also barred to the extent it seeks damages for actions taken by the Defendants prior to the *Cooper III* General Release. The only potential basis for a surviving claim would therefore be the testimony given by Officers Taylor and Pizzarro at the suppression hearing in November and December 2013. But, as discussed below, any such claim would fail for other reasons.

Plaintiff's derivative claim for failure to intervene (Ex. A, Compl. at ¶¶ 39–42) is also covered to the extent that the putative failure concerns a violation of Plaintiff's civil rights prior to September 2013. Moreover, Plaintiff has not articulated any plausible theory that would allow

him to hold one of the individual Defendants liable for 'failing to intervene' in any alleged viola-tion arising strictly out of the suppression hearing.  For example, Plaintiff cannot plausibly allege that Officers Walsh or Taylor had  the means and opportunity to prevent Officer Pizzarro from giving allegedly false testimony at the suppression hearing, yet failed to do so.  Because Plaintiff cannot proceed against any of the Defendants for an alleged "failure to intervene", that claim must be dismissed.

Finally, Plaintiff's *Monell* claim against the City (Ex. A, Compl. at ¶¶ 57–73) is not only subject to the General Release given in *Cooper III*, it is also barred by *res judicata* since it is ef-fectively the same claim that was already dismissed with prejudice as part of the settlement in *Cooper I & II.  See, e.g.*, *Marvel Characters v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes.").  The *Monell* claim in *Cooper I & II* involved the same par-ties as his claim in this case, and the mere fact that the complaints in *Cooper I & II* were drafted by a different counsel than the one in this case does not change the fact that all three cases con-tain a broadly-pleaded *Monell* claim aimed at the same alleged "policies" or "practices".  *E.g.*, *compare* Ex. L, *Cooper II* Complaint at ¶¶ 31–32 (alleging the existence of "arrest quotas") *with* Ex. A, Compl. at ¶ 62 (same); Ex. L, *Cooper II* Complaint at ¶ 29 (alleging policies that "pro-mote or condone perjury") *with* Ex. A, Compl. at ¶ 66 (alleging policies that lead to "systematic and ubiquitous perjury").  Finally, the mere fact that the alleged policies might have continued both before and after the settlement of *Cooper II* does not alter change the preclusive effect of either the dismissal in *Cooper II* or the General Release given in *Cooper III.  See, e.g.*, *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003) ("claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not

- 14 -

amount to a new claim."); *id.* at 384 ("claims based on ongoing conduct ordinarily can be extinguished so long as the settlement agreement is clearly drafted.").

Plaintiff has already been paid $25,000 to resolve all alleged violations of his civil rights prior to September 9, 2013; the claims in this case are premised on alleged violations of his civil rights that occurred prior to that date, and Plaintiff is not entitled to recover any further. His claims should therefore be dismissed.

## POINT II
### THE OFFICERS' TESTIMONY AT THE SUPPRESSION HEARING CANNOT SUPPORT A CLAIM FOR DENIAL OF RIGHT TO A FAIR TRIAL

Twenty years ago, the Second Circuit found that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). *See also Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) (finding it "firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer."). The "right to a fair trial" arises from "the notion that Americans enjoy the protection of due process of the law and fundamental justice", *Ricciuti*, 124 F.3d at 130, and a plaintiff claiming denial of that right must show a "deprivation of his liberty without due process of law." *Zahrey,* 221 F.3d at 348.

The Court of Appeals has never clearly identified the constitutional source of the "right to a fair trial." *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 276 n.6 (2d Cir. 2016) ("Whether this right is rooted in the Sixth Amendment or Fifth and Fourteenth Amendments, or both, is an issue we need not decide. . . ."). And, even though the right is described in terms of

- 15 -

"due process", the Second Circuit has recently distinguished the "right to a fair trial" from "procedural and substantive due process", *see Delamota v. City of New York*, 2017 U.S. App. LEXIS 4962, at *4 n.2 (2d Cir. Mar. 21, 2017), and has also clearly distinguished that right from the Fourth Amendment protections against unreasonable seizure.  *See Ricciuti*, 124 F.3d at 130 ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.").

The Supreme Court's recent decision in *Manuel v. City of Joliet* casts significant doubt on the continuing validity of the "right to fair trial" recognized by the Second Circuit.  *See generally* 137 S. Ct. 911 (2017).  In *Manuel*, the Court held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process."  137 S. Ct. at 920.  This overruled the Seventh Circuit's anomalous approach that had relegated such claims to the Due Process Clause of the Fourteenth Amendment.  *See id.* at 916 (indirectly quoting *Llovet* v. *Chicago*, 761 F. 3d 759, 763 (7th Cir. 2014)).  Moreover, the facts in *Manuel* squarely describe the type of claim that the Second Circuit has long described as a denial of the "right to a fair trial".  *See Manuel*, 137 S. Ct. at 919–20 (probable cause was lacking at the time plaintiff was bound over for trial because "all that the judge had before him were police fabrications about the [evidence].").  Although the Supreme Court stopped short of holding that malicious prosecution is the appropriate tort analogy for post-arraignment Fourth Amendment violations, it appears to hold that all claims concerning "the standards and procedures for the detention of suspects pending trial" must be framed as asserting a right under the Fourth Amendment.  *Manuel*, 137 S. Ct. at 920 n.8  (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)) (cleaned up).  Defendants therefore respectfully submit that the Plaintiff's "fair trial claim" must be read as duplicative of his Fourth Amendment claim brought under the rubrics of malicious prosecution and abuse of

process, and they urge the Court to carefully reevaluate *Ricciuti* and its progeny in light of *Manuel v. Joliet*.

The Complaint in this case sets forth the bare minimum of such a claim, and possibly fails to state it at all.  *See, e.g.*, *Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) ("We agree with the district court that because [plaintiff] has provided no detail regarding the evidence purportedly fabricated by the defendant officers, he has not stated a plausible claim for denial of the right to a fair trial.").  However, even if Plaintiff has stated a claim for "denial of a right to fair trial" *and* even if that claim remains viable following both the three releases as well as the Supreme Court's recent decision, Plaintiff still cannot recover damages for the "fabrication" he appears to be alleging, because it took the form of testimony for which the officers enjoy absolute immunity.  Plaintiff appears to allege that the officers "fabricated" the report to KCDA "that they had observed plaintiff in possession of [a] firearm."  Ex. A, Compl. at ¶ 19.  That "report" occurred when Officer Taylor communicated the details of the arrest to KCDA on January 13, 2012.  Thus ,to the extent it was that "report" that constitutes the basis of Plaintiff's claim, he has clearly waived his right to recover.[12]

As a preliminary matter, since Officer Walsh never testified at the suppression hearing that occurred in November and December 2013, after the *Cooper III* General Release (*see* Defs.' 56.1 at ¶ 14), he is entitled to summary judgment on any remaining fair trial claim because "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *see also*

---

[12] Defendants reserve their right to respond to any other alleged "fabrication" to the extent Plaintiff identifies some other putative basis for his claim in his opposition papers.

*Buie v. City of New York*, No. 12-CV-4390 (RJD) (CLP), 2015 U.S. Dist. LEXIS 147642, at *25 (E.D.N.Y.).

The "evidence" that Plaintiff claims was "fabricated"—Pizzarro's report that he saw Plaintiff holding the gun—could only reach the jury through Officer Pizzarro's eyewitness testimony, for which Pizzarro enjoys absolute immunity. *See Daloia v. Rose*, 849 F.2d 74, 76 (2d Cir. 1988) ("[P]olice officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony."); *see also id.* at 75 (suppression hearings are adversarial pretrial proceedings). Immunity for testimony at pretrial proceedings serves the same interests as immunity for testimony given at trial or before the grand jury—each of which have been expressly recognized by the Supreme Court. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 439 (E.D.N.Y. 2012) (citing *Briscoe v. Lahue*, 460 U.S. 325, 335–36, 341–46 (1983) (trial testimony) and *Rehberg v. Paulk*, 566 U.S. 356, 366–70 (2012) (grand jury)). Furthermore, as this Court has previously recognized, "testimonial immunity extends to 'preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony' to the prosecutor." *Horvath v. City of New York*, No. 12-CV-6005 (RJD) (JMA), 2015 U.S. Dist. LEXIS 51029, at *16–17 (E.D.N.Y.) (quoting *Rehberg*, 566 U.S. at 370).

Plaintiff also cannot establish that he suffered any deprivation of his liberty as a result of the alleged fabrication. But even if he could show a deprivation, he would be unable to "show causation—*i.e.*, that the alleged fabrication of evidence led to a deprivation of his liberty. That is because the only avenue by which the [fabricated evidence] could reach the jury was through [Pizzarro's] testimony, for which he enjoys absolute immunity." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) Whenever a police officer claims testimonial immunity, a claim related to that testimony can only proceed if "the plaintiff can make out the elements of his

§ 1983 claim without resorting to the [immunized] testimony." *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015).  Because Plaintiff cannot do that in this case, his "fair trial" claim should be dismissed.

## POINT III

### PLAINTIFF HAS NOT PLEADED OR ESTABLISHED A COLLATERAL OBJECTIVE SUPPORTING HIS ABUSE OF PROCESS CLAIM

A claim for malicious abuse of process requires Plaintiff to establish that the Defendants "employed regularly issued legal process . . . in order to obtain a collateral objective that is outside the legitimate ends of the process." *Arrington v. City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).  "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995); *see also Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) ("It is undisputed that an abuse of process claim may only be based on events *subsequent to* initiation.").  Moreover, the requirement of a collateral objective cannot be met merely by showing a malicious motive; there must be an improper purpose for the use of process, *i.e.*, something other than the purpose for which the law created it.  *See De Santis v. City of New York*, 2011 U.S. Dist. LEXIS 99126, at *24 (S.D.N.Y.) (citing *Savino*, 331 F.3d at 77 *and Hauser v. Bartow*, 273 N.Y. 370, 374 (1937) ("It is not enough that the actor have an ulterior motive in using the process of the court.  It must further appear that he did something in the use of the process outside of the purpose for which it was intended.")).

The Complaint in this case alleges that the Defendants "arrested Plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their assault of him."  Ex. A, Compl. at ¶ 54.  That is the only reference to an "assault" anywhere in

the Complaint, which does not allege excessive force (or any force at all).  Nor has there been any further development of an "assault" in discovery.  This claim therefore appears to be an arti- fact of the drafting process.  Thus, if Plaintiff intended to plead a cause of action for abuse of process, he has failed to actually do so, and his abuse of process claim must therefore be dis- missed.

**POINT IV**

**THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY**

Even if Plaintiff had not surrendered his claims for false arrest and malicious prosecution, the officers would be entitled to qualified immunity on those claims.  Qualified immunity pro- vides an important safeguard that allows law enforcement officers to perform their job without fear of constant litigation.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Police officers "who act in ways they reasonably believe to be lawful, should not be held personally liable" even if they were mistaken.  *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *see also Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994).  The Supreme Court has noted, time and again, that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In the Fourth Amendment context, even where an officer is mistaken about the existence of probable cause, he will be shielded from liability by the doctrine of qualified immunity so long as there was "arguable probable cause" to believe the Plaintiff had committed an offense.  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  The three officers here were reasonable in their belief that the gun found by Officer Pizzarro had been tossed by Plaintiff.

There is no dispute that Officers Walsh and Taylor pursued Plaintiff in a loop that went all the way around the building at 3112 Bayview Avenue, and back into the central area of the hous-

ing project.  *See* Ex. C, Taylor Dep. at 28:05–34:20, 40:05–49:14; Ex. D, Walsh Dep. at 43:22–

46:23, 49:17–55:08; Ex. E, Pl.'s Dep. at 10:19–16:16.  Although Plaintiff makes the implausible

claim that the chase proceeded at a walking pace, (*see, e.g.*, Ex. E, Pl.'s Dep. at 14:03–07), that is

not relevant here.  What is relevant is that Plaintiff admits that along the way he "tossed [his]

scarf in the grass."  Ex. E, Pl.'s Dep. at 21:09–10.  Plaintiff also admits that the scarf was black.

*Id.* at 23:02–05.  For his part, Officer Taylor testified that he saw Plaintiff "throw an object" into

the grass, and admits that initially he did not know what it was.  Ex. C, Taylor Dep. at 34:21–

35:20.  Officer Walsh also saw Plaintiff throw something into the grass and put a call over the

radio reporting what he had seen.  Ex. D, Walsh Dep. at 46:20–23.[13]  Finally, Officer Pizzarro

testified that, when he went to the location identified by Officer Walsh, he found the firearm in

the grass almost immediately.  Ex. B, Pizzarro Dep. at 51:04–53:25.

   Although Plaintiff now claims that he has never held a gun, and that none of the officers

saw him holding a gun, he has not—and cannot—plausibly refute the fact that a gun was recov-

ered from the grassy strip next to 3112 Bayview Avenue after he and gone by with Officers

Walsh and Taylor in pursuit.  While Plaintiff challenges Officer Pizzarro's credibility and contra-

dicts his testimony about seeing Plaintiff with the firearm, there is absolutely no evidence that

contradicts the account of how the gun was found.  For example, Plaintiff cannot avoid summary

judgment by offering a naked allegation that Pizzarro or one of the other officers planted the gun.

His own testimony would be inadmissible for lack of foundation, and there would be nothing to

rebut the Defendants' account of how and where the gun was found.  *See D'Amico v. City of New*

*York*, 132 F.3d 145, 149 (2d Cir. 1998) (Plaintiff "must offer some hard evidence showing that

---

[13] Although Walsh maintained at his deposition—four and a half years after the fact—that he recognized the object as a firearm, his overall recollection was less complete than Taylor's and might have been colored by hindsight.

[his] version of the events is not wholly fanciful."). At most, Plaintiff could only claim "that there is some metaphysical doubt as to the material facts," by offering "conclusory allegations or unsubstantiated speculation" which are insufficient to defeat summary judgment. *Brown*, 654 F.3d at 358.

It is not necessary for the Defendants to prove that Plaintiff had possession of the gun that Officer Pizzarro found in the grass. Accepting Plaintiff's version as true (that he threw a scarf, not a gun), the Defendants can be forgiven for mistaking a black scarf for a black gun thrown during a foot chase at night. The coincidental finding of a (non-working) gun in proximity to where they had seen Plaintiff throw something would have only reinforced that reasonable mistake. It was therefore reasonable for the officers to believe that probable cause existed for Plaintiff's arrest and prosecution, and they would therefore be entitled to qualified immunity on his claims for false arrest and malicious prosecution.

## POINT V
### PLAINTIFF HAS NOT ADDUCED EVIDENCE SUPPORTING HIS *MONELL* CLAIM

Even if Plaintiff had not released the City from any possible *Monell* claim—and even if that claim was not barred by *res judicata*, Plaintiff would still have to establish that his rights were actually violated by one of the individual Defendants before he could pursue those claims against the City under *Monell*. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As set forth above, Plaintiff cannot establish any violation of his civil rights. But, even if he could establish a violation of his constitutional rights, he has not conducted any *Monell* discovery aimed at establishing any of the allegations in the Complaint. Since those allegations are based almost exclusively on inadmissible hearsay such as newspaper articles and citations to pleadings and orders in other cases, he needed to establish actual evidence to support those claims in dis-

covery but has failed to do so.  For example to the extent Plaintiff is alleging a *Monell* claim based on deliberate indifference to training, to survive summary judgment he would have had to "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (cleaned up).  Plaintiff has not taken any discovery on the City's current training, and therefore cannot identify any deficiencies in that program, much less tie them to the ultimate injury.  Furthermore, it is well settled that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Henderson v. Town of Greenwich*, 317 F. App'x 46, 47 (2d Cir. 2009) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).  Yet Plaintiff has not developed admissible evidence about other, similar incidents during discovery, and therefore cannot establish this claim.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish a right to recover on any of his claims, and Defendants therefore respectfully request that the Court grant their motion for summary judgment in its entirety, dismiss the Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 22, 2017

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants City of New York, Walsh,*
*      Taylor, and Pizzarro*
100 Church Street
New York, New York 10007
(212) 356-2661

By: _____
     Tobias E. Zimmerman
     *Senior Counsel*
     Special Federal Litigation Division

cc:    Robert Marinelli, Esq. (**via email**)
       *Attorney for Plaintiff*

- 23 -