UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ROBERT COOPER,

        Plaintiff,

     -against-                        14 CV 1761 (RJD) (RML)

CITY OF NEW YORK, et al.,

                                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

LAW OFFICE OF ROBERT MARINELLI

*Attorneys for Plaintiff Robert Cooper*

305 Broadway, Suite 1001
New York, New York 10007
(212) 822-1419

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................2

STANDARD OF REVIEW....................................................................................................4

ARGUMENT ........................................................................................................................5

POINT I   DEFENDANTS FAILED TO PLEAD WAIVER AND RELEASE
AS AN AFFIRMATIVE DEFENSE AND HAVE THEREFORE
WAIVED ANY SUCH CLAIMS AT THIS LATE,  POST-DISCOVERY STAGE
OF THE LITIGATION.…………………………………………………………5

    A.  Defendants Must Satisfy FRCP 15 and 16 ...........................................5

    B.  Defendants Not Entitled to Amend Their Answer:
No Good Cause for the Delay...................................................................  6

    C.  Defendants Not Entitled to Amend Their Answer:
Undue Delay and Prejudice .....................................................................10

POINT II   RELEASES EXECUTED IN PRIOR LITIGATION DO NOT BAR
PLAINTIFF'S CLAIMS IN THIS ACTION ……………………………………11

    A. Accrual of Malicious Prosecution and Denial of Fair Trial Claims
Postdate Release .....................................................................................12

    B. Defendants Liable For All Acts That Postdate The Release.................15

POINT III   PLAINTIFF HAS ESTABLISHED HIS RIGHT TO A TRIAL ON HIS DENIAL
OF A FAIR TRIAL CLAIM…………………………………………..……………16

    A. The Denial of a Fair Trial Claim ..........................................................17

    B.  Materiality and Causation...................................................................19

    C. The Evidence of Fabrications ..............................................................20

POINT IV   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ............21

CONCLUSION ...................................................................................................................23

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                            <u>Page</u>

*Anderson v. Branen*,
17 F.3d 552 (2d Cir. 1994) ........................................................................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................................4

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
760 F.2d 442 (2d Cir. 1985) ......................................................................................10

*Bailey v. City of New York*,
79 F. Supp. 3d 424  (E.D.N.Y. 2015) ........................................................................12

*Berman v. Parco*,
986 F.Supp. 195 (S.D.N.Y.1997) ..............................................................................10

*Binder v. Long Island Lighting Co.*,
933 F.2d 187 (2d Cir. 1991) ........................................................................................4

*Brady v. Town of Colchester*,
363 F.2d 205 (2d Cir. 1988) ........................................................................................4

*Bruner v. Dunaway*,
684 F.2d 422 (6th Cir. 1982), cert. denied, 103 S.Ct. 816(1983)..............................20

*Byrd v. Brishke*,
466 F.2d 6 (7th Cir. 1972) .........................................................................................20

*Byrd v. Clark*,
783 F.2d 1002 (11th Cir. 1986) .................................................................................20

*Carpenter v. Churchville Greene Homeowner's Ass'n*,
2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011),
adopted in its entirety,
2011 WL 6012539 (W.D.N.Y. Dec. 1, 2011) ..............................................................8

*Coggins v. Buonora*,
776 F.3d 108 (2d Cir.), cert. denied, 135 S. Ct. 2335 (2015) ....................................18

*Cresswell v. Sullivan & Cromwell*,
922 F.2d 60 (2d Cir. 1990) ........................................................................................10

*Fischl v. Armitage*,
128 F.3d 50 (2d Cir. 1997) ........................................................................4

*Garnett v. Undercover Officer C0039*,
838 F.3d 265 (2d Cir. 2016) ...............................................................17,19

*Gibbs-Alfano v. Burton*,
281 F.3d 12 (2d Cir. 2002) ........................................................................4

*Greene v. City of New York*,
2017 WL 1030707 (E.D.N.Y. Mar. 15, 2017)...........................................14

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003) .....................................................................7, 8

*Heck v. Humphrey*,
512 U.S. 477 (1994) ................................................................................12

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009) ......................................................................8

*In re Milk Prods. Antitrust Litig.*,
195 F.3d 430 (8th Cir. 1999) ......................................................................8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ......................................................................8

*Kintetsu World Express (USA), Inc. v. Johnson Controls Inc.*,
2015 WL 9273942 (E.D.N.Y. Dec. 17, 2015) .............................................8

*Kinzer v. Jackson*,
316 F.3d 139 (2d Cir. 2003) ....................................................................12

*Lamothe v. Town of Oyster Bay*,
2011 WL 4974804 (E.D.N.Y. Oct. 19, 2011). ............................................9

*Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
967 F.2d 742 (2d Cir. 1992). ......................................................................5

*Lowth v. Town of Cheektowaga*,
82 F.3d 563 (2d Cir. 1996) ......................................................................12

*Lyondell–Citgo Ref., LP v. Petroleos De Venez, S.A.*,
2004 WL 2650884 (S.D.N.Y. 2004) ........................................................10

*MacDraw, Inc. v. CIT Group Equip. Fin.*,
157 F.3d 956 (2d Cir. 1998) ................................................................ 10

*Manuel v. City of Joliet, Ill.*,
137 S. Ct. 911 (2017) ........................................................... 12, 16, 17

*Mathis v. United Homes, LLC*,
607 F. Supp. 2d 411 (E.D.N.Y. 2009) ................................................ 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................. 4

*Murphy v. Lynn*,
53 F.3d 547 (2d Cir. 1995) ................................................................ 12

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,
2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006) ...................................... 8

*Newton v. Rumery*,
480 U.S. 386 (1987) ............................................................................. 5

*O'Neill v. Krzeminski*,
839 F.2d 9 (2d Cir. 1988) .................................................................. 20

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000) ........................................................... 7-8

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
889 F. Supp. 2d 453 (S.D.N.Y. 2012) ................................................ 9

*Perry v. Merit Sys. Prot. Bd.*,
137 S. Ct. 1975 (2017) ......................................................................... 5

*Poventud v. City of N.Y.*,
750 F.3d 121 (2d Cir. 2014) .............................................................. 12

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
582 F.3d 244 (2d Cir. 2009); ............................................................. 9

*Priestley v. American Airlines, Inc.*,
1991 WL 64459 (S.D.N.Y. April 12, 1991) ...................................... 10

*Rehberg v. Paulk*,
132 S.Ct. 1497 (2012) ........................................................................ 18

*Rentas v. Ruffin*,
816 F.3d 214 (2d Cir. 2016) ...............................................................................17

*Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*,
215 F.R.D. 100 (S.D.N.Y.2003)) ...........................................................................9

*Reyes v. Phoenix Beverages, Inc.*,
207 F. Supp. 3d 206, 217 (E.D.N.Y. 2016)
reconsideration granted in part,
2016 WL 6068130 (E.D.N.Y. Oct. 13, 2016) ...................................................7, 8

*Ricciuti v. N.Y.C. Transit Authority*,
124 F.3d 123 (2d Cir. 1997) ...............................................................................17

*Riofrio Anda v. Ralston Purina Co.*,
959 F.2d 1149 (1st Cir. 1992) ...............................................................................8

*Ruotolo v. City of New York*,
2006 WL 2372236 (S.D.N.Y. Aug. 16, 2006) .....................................................10

*Russell v. Smith*,
68 F.3d 33 (2d Cir. 1995) ...................................................................................12

*Saks v. Franklin Covey Co.*,
316 F.3d 337 (2d Cir. 2003) .................................................................................7

*Santos v. Dist. Council of New York City & Vicinity of
   United Bhd. of Carpenters & Joiners of Am., AFL-CIO*,
619 F.2d 963 (2d Cir. 1980) .................................................................................5

*Satchell v. Dilworth*,
745 F.2d 781 (2d Cir. 1984) .................................................................................5

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir.1998) ................................................................................17

*Shabazz v. Kailer*,
201 F. Supp. 3d 386 (S.D.N.Y. 2016) .................................................................12

*Singer v. Fulton County Sheriff*,
63 F.3d 110 (2d Cir. 1995) .................................................................................12

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) .......................................................9

*Sompo Japan Ins. Co. of America v. Norfolk Southern Ry. Co.*,
762 F.3d 165 (2d Cir. 2014); ..................................................................................5

*Soomro v. City of New York*,
174 F. Supp. 3d 806 (S.D.N.Y. 2016) .....................................................................19

*Sosa v. Airprint Sys., Inc.*,
133 F.3d 1417 (11th Cir. 1998) ...............................................................................8

*Spak v. Phillips*,
857 F.3d 458 (2d Cir. 2017). ..................................................................................12

*Steiner v. City of New York*,
920 F. Supp. 333 (E.D.N.Y. 1996) ..........................................................................6

*Tokio Marine v. Macready*,
803 F. Supp. 2d 193 (E.D.N.Y. 2011) ......................................................................4

*Townes v. City of New York*,
176 F.3d 138 (2d Cir. 1999) ...................................................................................18

*United States v. Landau*,
155 F.3d 93 (2d Cir. 1998) .......................................................................................5

*United States v. Rem*,
38 F.3d 634 (2d Cir. 1994) .......................................................................................4

*Wallace v. Kato*,
549 U.S. 384 (2007) ................................................................................................11

*Watson v. United States*,
865 F.3d 123 (2d Cir. 2017) ...............................................................................14-15

*Webb v. Hiykel*,
713 F.2d 405 (8th Cir. 1983) ..................................................................................20

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) .....................................................................................4

*White v. Frank*,
855 F.2d 956 (2d Cir.1988)) ...................................................................................17

*Zahrey v. Coffey*,
221 F.3d 342 (2d Cir. 2000) ...................................................................................17

*Zellner v. Summerlin*,
494 F.3d 344 (2d Cir. 2007) ........................................................................................21


State Cases

*Broughton v. State of New York*,
37 N.Y.2d 451,  cert. denied, 423 U.S. 929 (1975)........................................................14

*Colon v. City of New York*,
60 N.Y.2d 78, 468, N.Y.S.2d 453, 455 N.E.2d 1248 (1983) .........................................12

## PRELIMINARY STATEMENT

Plaintiff Robert Cooper respectfully submits this Memorandum of Law in opposition to the motion by the defendants for summary judgment pursuant to Fed. R. Civ. P. 56, and hereby incorporates the accompanying Local Rule 56.1 Responsive Statement of Facts, declaration of counsel and the exhibits submitted therewith, as well as the pleadings and materials previously filed in this action.

This action concerns the arrest of Robert Cooper by the defendants and his subsequent prosecution by the Kings County District Attorney ("KCDA"). As defendants acknowledge, the prosecution was eventually dismissed after the criminal court determined that defendant Pizzarro had given "bizarre and implausible" testimony.   (Defs. Brief at 3). Plaintiff is asserting, in relevant part, causes of action sounding in false arrest, denial of a fair trial, and malicious prosecution, and is asserting that each of the individual defendants are liable for either their direct participation or failure to intervene in said misconduct.[1]

The defendants now seek summary judgment as to the entirety of the complaint, arguing that plaintiff had released defendants from all such claims when he settled an earlier lawsuit. However, it is plain that (a) defendants waived the affirmative defense of waiver and release by failing to plead it in their answer, and, in any event, (b) the majority of plaintiff's causes of action accrued after the date of the release. Defendants' remaining arguments are a mix of sophistry and misstatements of law.  The motion should be denied in its entirety.

---

[1]  Plaintiff hereby withdraws his claims under *Monell* and for malicious abuse of process.

[2]   Defendants are not moving for qualified immunity for the fair trial claim. (Defs. Brief at 20).

## STATEMENT OF FACTS

On January 12, 2012 plaintiff exited his apartment building at 3144 Bayview Avenue, which is part of the Gravesend Apartment Projects. Plaintiff, accompanied by friends he had run into when he went outside, walked towards a local store. See Exhibit 1 to Declaration of Robert Marinelli ("Marinelli Dec."), Deposition Transcript of of Robert Cooper ("Cooper Dep.") at 8:11-9:14.

Plaintiff heard someone yell "police are behind us." In response plaintiff started walking faster around the complex. Other individuals in plaintiff's group began to run. *Id* at 9:20-10:4. Ultimately, defendant Michael Walsh approached plaintiff from behind, put a gun directly on plaintiff's back and asked, "where is the gun." *Id* at 15:5-15:12.  Plaintiff was then placed under arrest at 7:25 p.m. *See* Plaintiff's Counter-Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("P56.1"), at ¶27. At 7:33 p.m. a Sergeant from the 60th precinct comes on the scene and requests assistance from ESU to look for evidence. *Id* at ¶28 and at 7:49 p.m., 24 minutes after plaintiff's arrest, it is reported that evidence is found. *Id* at ¶28

Plaintiff was taken to Brooklyn Central Booking, and on January 14, 2013, arraigned on the misdemeanor charge of Criminal Possession of a Weapon in the Fourth Degree and had bail set. After about a week on Rikers Island, plaintiff posted bail and was released. *See* Defs.' 56.1 at ¶11-12.

On January 13, 2012, Taylor told the Kings County District Attorney's Office ("KCDA") that he (i) pursued plaintiff on foot, (ii) saw plaintiff reach into his waistband and throw what appeared to be a firearm into the bushes, (iii) apprehended plaintiff, and then (iv) personally recovered the pistol from those same bushes. P56.1 at ¶30. On January 17, 2012 Taylor swore under oath that this recital of facts were true.

On November 13, 2014 Pizzarro testified at a suppression hearing that after receiving a radio call, he -- not Walsh -- easily found the pistol allegedly thrown by plaintiff. Moreover, he was alone with the pistol for two to three minutes before additional units arrived. See P56.1 at ¶35. Pizzarro also testified that he had lost the memo book that he used during plaintiff's arrest during Hurricane Sandy. See P56.1 at ¶35. The hearing court credited Pizzarro's testimony and, initially, denied the motion to suppress.

Plaintiff's criminal defense counsel subsequently located and produced a copy of Pizzarro's allegedly destroyed memo book, and in December 2013, the hearing court reopened the suppression . P56.1 at ¶38. Pizzarro tried to explain away the existence of the memo book he had sworn no longer existed. As defendants acknowledge, the hearing court found PIzzarro's testimony "bizarre and implausible" and his manner evasive and defensive. The hearing court then reversed its previous decision and suppressed the gun defendants alleged to have recovered been plaintiff. P56.1 at ¶39. On December 16, 2013, all charges were dismissed on motion of the KCDA. **(CITE)**

## STANDARD OF REVIEW

It is well settled that "[t]he 'party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.'" *Tokio Marine v. Macready*, 803 F. Supp. 2d 193, 198 (E.D.N.Y. 2011), citing *Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002) (internal citation omitted). Moreover, "in determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.*, quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986)). As a rule, "credibility assessments, choices between conflicting versions of events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997); See also United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994). It is well established that when deciding a summary judgment motion, "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 363 F.2d 205, 210 (2d Cir. 1988), citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991). Summary judgment is not warranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**ARGUMENT**

**POINT I**

**DEFENDANTS FAILED TO PLEAD WAIVER AND RELEASE AS AN AFFIRMATIVE DEFENSE AND HAVE THEREFORE WAIVED ANY SUCH CLAIMS AT THIS LATE, POST-DISCOVERY STAGE OF THE LITIGATION**

The defendants' primary argument is that plaintiff has expressly released defendants from the claims he is pursuing. This affirmative defense of waiver and release fails for a number of reasons, not the least of which is that the defendants' failure to plead this defense necessarily waives the defense and compels its preclusion at this late stage of the litigation. As the Supreme Court has recently reaffirmed, "[i]n civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading. See Fed. Rule Civ. Proc. 8(c)(1) (listing among affirmative defenses 'release' and 'waiver')." *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1987 (2017) (citing *Newton v. Rumery*, 480 U.S. 386, 391(1987). Accordingly, if defendants intended to rely on a release previously executed by the plaintiff, it was incumbent upon defendants to expressly plead that defense in their answer.

It is equally well settled that the "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (internal quotation marks omitted); *see also Sompo Japan Ins. Co. of America v. Norfolk Southern Ry. Co.*, 762 F.3d 165, 176–77 (2d Cir. 2014); *United States v. Landau*, 155 F.3d 93, 107 (2d Cir. 1998); *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751–752 (2d Cir. 1992). Moreover, the defense must be asserted in a party's responsive pleading 'at the earliest possible moment' or it is waived. *Santos v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d

963, 967 (2d Cir. 1980) (citations omitted); *Steiner v. City of New York*, 920 F. Supp. 333, 342 (E.D.N.Y. 1996) (same).

In this case, plaintiff filed the complaint on March 17, 2014, which was some six months after plaintiff had executed the last of his general releases in favor of the defendants. (Defs. Brief at 5). The defendants answered on August 29, 2014. (Docketed as Document 9). Notably, while the defendants did assert thirteen separate affirmative defenses, they failed or chose not to argue that plaintiff had waived any of his of action or otherwise released the defendants from any such liability. Discovery, fraught with litigation and competing motions to compel, began in September 2014, and continued through early 2017, when defendants filed their request for a pre-motion conference in anticipation of this motion practice. As set forth in (A) *infra*, the defendants and defense counsel had actual, as well as constructive knowledge of the releases. Yet, at no point during the more than three years that passed after defendants filed their answer did defendants amend their complaint.

What is most striking about defendants' motion is their failure to address this fatal deficiency. One might reasonably expect that the defendants, having failed to plead the affirmative defense of waiver and release as expressly required under Rule 8(c), would mention this omission in their motion. However, defendants offer no explanation for the absence of the affirmative defense, they proceed as though it is of no consequence. It is as though defendants believe either that the law does not require the defense to be plead, or that the law has no application to them. In either event, defendants have waived this defense.

**A.    Defendants Must Satisfy FRCP 15 and 16**

It is established that when a party seeks leave to amend a pleading after the deadline for such amendments has passed, the moving party must satisfy both Fed. R. Civ. P. 15 and the more

demanding standard of Fed. R. Civ. P. 16. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). This is not to say that defendants' waiver should be summarily swept aside. There is a good argument that defendants' obvious waiver is enough to preclude any further discussion of this matter. However, were the Court willing to overlook the defendants' waiver of the affirmative defense of waiver and release at the pleading stage, and their ongoing failure to address this error over the two-and-a-half years of litigation that followed, this Court must evaluate defendants' belated request for leave to add the affirmative defense under both Rules 15 and 16.

This issue was addressed in a recent Eastern District decision in which the Court noted that while it "may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings, to do so, the court should construe the motion for summary judgment as a motion to amend the defendant's answer." Reyes v. Phoenix Beverages, Inc., 207 F. Supp. 3d 206, 217 (E.D.N.Y. 2016), reconsideration granted in part, 2016 WL 6068130 (E.D.N.Y. Oct. 13, 2016) (citing Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) (internal quotations omitted)).

Significantly, however, the Court in *Reyes* further noted that this evaluation is to be guided by both Rule 15 and 16:

> But such motions to amend are themselves governed by the Federal Rules of Civil Procedure, namely Rules 15 and 16. Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,'

> must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause,' which depends on the diligence of the moving party.

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003); *Carpenter v. Churchville Greene Homeowner's Ass'n*, 2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011), adopted in its entirety, 2011 WL 6012539 (W.D.N.Y. Dec. 1, 2011)*Parker*, 204 F.3d at 339–40 (citing Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b))). More to the point, the Court further confirmed, "where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." *Id.*

Finally, the Court noted, "[s]everal circuits have ruled that the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings. . . .We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. *Id.* (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998); *In re Milk Prods. Antitrust Litig.*,195 F.3d 430 (8th Cir. 1999); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992); *Riofrio Anda v. Ralston Purina Co.*, 959 F.2d 1149 (1st Cir. 1992); *Kintetsu World Express (USA), Inc. v. Johnson Controls Inc.*, 2015 WL 9273942 (E.D.N.Y. Dec. 17, 2015); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006); *Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009); Holmes *v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotations and citations omitted)).

**B.    Defendants Not Entitled to Amend Their Answer:**
**No Good Cause for the Delay**

In order to "show good cause" for their failure to seek leave to amend, the defendants "demonstrate that it has been diligent." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citing *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 266–67 (2d Cir. 2009); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009); *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100 (S.D.N.Y.2003); *Lamothe v. Town of Oyster Bay*, 2011 WL 4974804, at *5–6 (E.D.N.Y. Oct. 19, 2011)).

In this case, the defendants have yet to admit that they failed to plead the affirmative defense of waiver and release and have never once sought leave to amend. Needless to say, defendants have made no attempt to establish good cause for these failings, as they are proceeding as though there was no failure to plead in the first instance. In sum, defendants have yet to establish their right to amend under the more forgiving standard of Fed. R. Civ. 15, much less meet their burden of showing good cause.

In any event, the record is clear that the defendants – and their house counsel at the Law Department – were aware of the September 2013 release as of the date of its execution. Certainly they were aware of it when plaintiff commenced this lawsuit in 2014, and remained, or could easily have learned of it, at any time through the close of discovery in 2017. They simply failed to  plead it, just as they failed to later correct this error when such a correction would have still been timely, or any time thereafter. That defendants chose not to address their failure to plead, or seek leave to plead, this affirmative defense is understandable given the complete absence of any cognizable excuse for this failure. Defendants have thus made no attempt to show good cause nor is there any basis in the record to permit such a belated (and unrequested) amendment to the

answer. Defendants should therefore be precluded from amending their answer to assert this affirmative defense under Fed. R. Civ. P. 16(b)(4).

**C.      Defendants Not Entitled to Amend Their Answer:**
**         Undue Delay and Prejudice**

As has often been held, a "motion to amend should be denied if there is an apparent or declared reason—such as undue delay[.]" *Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 436 (E.D.N.Y. 2009) (internal citations and quotations omitted). Moreover, prejudice may be found when the amendment is sought after discovery. *Ruotolo v. City of New York*, 2006 WL 2372236, at *2 (S.D.N.Y. Aug. 16, 2006) (citing *Lyondell–Citgo Ref., LP v. Petroleos De Venez, S.A.*, 2004 WL 2650884, at *1–2 (S.D.N.Y. 2004) (citing *Berman v. Parco*, 986 F.Supp. 195 (S.D.N.Y.1997))); *Priestley v. American Airlines, Inc.*, 1991 WL 64459, at *1–2 (S.D.N.Y. April 12, 1991) ("Insofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable."); *see also MacDraw, Inc. v. CIT Group Equip. Fin.*, 157 F.3d 956, 962 (2d Cir. 1998) (affirming district court's denial of leave to amend where it was requested after the close of discovery); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming the district court's denial of leave to amend after the nonmovant had filed for summary judgment, discovery had been completed, and more than 17 months had elapsed following the commencement of the action, and noting that the party seeking leave to amend has the burden of providing a satisfactory explanation for the delay); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming the district court's denial of leave to amend where the proposed new claims were raised after discovery had been completed and the nonmoving party had filed for summary judgment).

In this case, discovery commenced in September 2014, and continued into March 2017.

As reflected on the docket, there were numerous motions to extend discovery over the course of the case. There were at least ten (10) depositions taken and the parties engaged in numerous rounds of motion practice during a prolonged period of contentious discovery. The plaintiff has incurred thousands of dollars in litigation expenses and far more in legal fees, in order to litigate the claims he has brought and the defenses the defendants have asserted. It is grossly prejudicial to the plaintiff for defendants to keep their affirmative defenses in their back pocket until the last moment, as though Rules 15 and 16 do not exist. Having caused plaintiff, and the Court as well, to expend substantial resources litigating expressly stated claims and defenses for a period of years, the defendants cannot now, long after the close of discovery, seek to litigate defenses it could and should have raised at the outset of the case. Such conduct is the epitome of undue delay and prejudice and alone is a basis for denying this aspect of defendants' motion.

## POINT II

### RELEASES EXECUTED IN PRIOR LITIGATION DO NOT
### BAR PLAINTIFF'S CLAIMS IN THIS ACTION

Even assuming *arguendo* that defendants had timely interposed waiver and release, the affirmative defense would be relevant only as to plaintiff's cause of action for false arrest. The time line is not in dispute: the arrest at issue in this case occurred on January 12, 2012, and plaintiff was subsequently prosecuted until all charges were dismissed on December 16, 2013. Plaintiff executed the general release cited by defendants September 9, 2013, which was after the arrest but prior to the termination of his prosecution. Thus, plaintiff's false arrest claim accrued on the date of his post-arrest arraignment, which was on January 14, 2012. *Wallace v. Kato*, 549 U.S. 384, 391–92 (2007). However, as discussed below, plaintiff's two post-arraignment causes of action accrued well after the date of the executed release, and therefore the general release has

11

no effect on either claim.

**A.     Accrual of Malicious Prosecution and**
**        Denial of Fair Trial Claims Postdate Release**

A claim for malicious prosecution under 42 U.S.C. § 1983, requires proof of four elements: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was instituted with malice; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was terminated in the plaintiff's favor. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-17 (2d Cir. 1995); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468, N.Y.S.2d 453, 455 N.E.2d 1248 (1983)); *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)).

As the Supreme Court has again affirmed, "[a] claim of malicious prosecution 'does not accrue until the criminal proceedings have terminated in the plaintiff's favor.'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 924 (2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); *Poventud v. City of N.Y.*, 750 F.3d 121, 130 (2d Cir. 2014) (en banc) ("In malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution 'terminate[s] in the plaintiff's favor.'" (citation omitted)); *see also Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). To be clear, a "favorable termination" does not occur until the criminal prosecution against the plaintiff has "conclusively" ended. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).

The plaintiff's denial of a fair trial claim is equally timely relative to the release. That a favorable termination is necessary for these claims is well established. *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016); *Bailey v. City of New York*, 79 F. Supp. 3d 424, 454–55

(E.D.N.Y. 2015). Here, the defendants collaborated on a fabricated narrative and presented this falsified version of events to prosecutors in order to cover up and justify their wrongful arrest of the plaintiff, and compel and support the plaintiff's subsequent criminal prosecution. As discussed more fully II(B) *infra*, the defendants' communication of this manufactured and materially false story to prosecutors began immediately after plaintiff's arrest, and continued unabated throughout his prosecution. Having lied initially, the defendants continued to maintain that lie repeatedly until the criminal case finally collapsed under the weight of these falsehoods. At no point did any of the defendants ever correct their prior misstatements, or the misstatements they knew were made by their co-defendants. In short, the defendants lied repeatedly and consistently until they were caught. It was then that the criminal case was terminated in plaintiff's favor and this cause of action accrued.

In the release cited by defendants, plaintiff agreed to the following language:

> KNOW THAT I, ROBERT COOPER . . . . do hereby release and discharge the defendants, City of New York, Police Officer Michael Santaniello and the individuals named herein as "John and Jane Doe 1 through 10"; their successors or assigns; and all past and present officials, employees, representatives and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from **any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release**, including claims for costs, expenses, and attorneys' fees.

(Defs. Exh. T at 2 (emphasis added)).

This release was signed and notarized on September 9, 2013, which is the operative cut-off "date of this General Release." (Id.). This release was executed, obviously, prior to the December 16, 2013, dismissal of plaintiff's criminal prosecution underlying this action. To circumvent this inconvenient fact, defendants offer a dizzying series of intellectual and linguistic

contortions. These arguments are without merit.

First, defendants suggest that plaintiff's malicious prosecution claim is grounded constitutionally on his seizure following his arrest and arraignment, and thus this is the proper accrual date for plaintiff's malicious prosecution cause of action. This is inaccurate. When a plaintiff sues for his wrongful detention beyond his arraignment, that claim – as the Second Circuit has long since determined – sounds in false imprisonment.  *Id.* (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314, cert. denied, 423 U.S. 929 (1975)).

The Second Circuit has recently restated false arrest and malicious prosecution are fundamentally different in that each protects a different personal interest and is composed of different elements. The fundamental distinction being that false imprisonment claims are limited to the wrongful detention or seizure of the plaintiff, while malicious prosecution claims concern the commencement and maintenance of a wrongful prosecution.  Thus, when a person remains wrongly seized following an arraignment, "[that post-arraignment] unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution." *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017) (cleaned up). It is therefore entirely reasonable that claims for false imprisonment accrue at arraignment, as opposed to those for malicious prosecution, which requires that the criminal case first be favorably terminated. *Greene v. City of New York*, 2017 WL 1030707, at *17 (E.D.N.Y. Mar. 15, 2017) (citing *Wallace*, 549 U.S. at 389).

Hence, to the extent that plaintiff has asserted a claim limited to his unlawful imprisonment prior to and then following his arraignment, such claims (asserted under federal law) accrued at plaintiff's 2012 arraignment, and are covered by the September 2013 release. However, in the context of plaintiff's malicious prosecution claim, this seizure is – as the Second

14

Circuit noted in *Watson* – but one element of plaintiff's damages; it is not the essence of plaintiff's cause of action, nor is it even a requirement. Put differently, plaintiff would not have a cause of action for malicious prosecution absent being able to satisfy each of the criteria required. This did not occur until his prosecution was dismissed on December 16, 2013, i.e., well after the date of the release.

The defendants further argue that plaintiff has released the defendants from any claims relating to their conduct prior to the date of the release. This is not what the release actually states, although it would have been simple enough for the City of New York, whose counsel drafted the release, to expressly state that the release covered any civil rights claims relating to any arrests or prosecutions that occurred prior to the date of the release. They chose instead to limit the scope of the release to liability for claims arising on or before September 9, 2013. It is axiomatic that defendants were not, and could not, have been liable to plaintiff for his malicious prosecution or denial of a fair trial until this case was favorably terminated.

**B.     Defendants Liable For All Acts That Postdate The Release**

Even if the Court were to apply the release so as to bar any claim concerning conduct that occurred prior to the operative date of the release, plaintiff's post-arraignment claims would still permit recover for malicious prosecution and the denial of a fair trial as the defendants' actions continued beyond the date of the release.

Plaintiff has alleged that defendants began lying to prosecutors immediately after the plaintiff's arrest, claiming falsely that they had actually seen plaintiff throw a handgun and that, depending on which officer was doing the lying, that the gun was immediately recovered by either Pizzarro or Taylor. It was this collectively developed fiction that led to the initiation of plaintiff's prosecution. At no time did any of the defendants ever change their story or inform

prosecutors that the story they were telling was materially inaccurate.

The defendants have conceded as much, acknowledging in their motion that Pizzarro testified twice at a suppression hearing in plaintiff's criminal prosecution in November and December 2013. It was then that the criminal court concluded that Pizzarro's testimony was "bizarre and implausible," and granted plaintiff's motion. (Defs. Brief at 3 (citing criminal court record)). Prosecutors dismissed the case shortly thereafter on December 16, 2013. These facts establish conclusively, and certainly for the purposes of this motion where all inferences are to be drawn in favor of the non-moving party, that the defendants were continuing to maintain their falsified narrative well beyond September 6, 2013.

## POINT III

### PLAINTIFF HAS ESTABLISHED HIS RIGHT TO A TRIAL
### ON HIS DENIAL OF A FAIR TRIAL CLAIM

Defendants' arguments concerning plaintiff's denial of a fair trial claim are (i) the very cause of action has been invalidated by the Supreme Court; (ii) defendants' lies to prosecutors are not competent evidence of the deprivation of his liberty; and (iii) plaintiff has not provided evidence of defendants' fabrications. The first two contentions are grounded on specious misstatements of law, while the third is factually incorrect.

**A.**     **The Denial of a Fair Trial Claim**

As an initial matter, the defendants ask the Court to find that dicta in a footnote to the Supreme Court's holding in *Manuel* (137 S. Ct. at 920 n.8) has eliminated the cause of action for denial of a fair trial. In actuality, this was neither the holding of *Manuel*, nor was it collaterally addressed. Employing a rhetorical sleight of hand, the  defendants cite to the

Supreme Court's comment that unlawful seizures are governed by the Fourth Amendment, and conclude: "Defendants therefore respectfully submit that the Plaintiff's fair trial claim must be read as duplicative of his Fourth Amendment claim brought under the rubrics of malicious prosecution and abuse of process, and they urge the Court to carefully reevaluate *Ricciuti* and its progeny in light of *Manuel v. Joliet*." (Defs. Brief at 16-17 (internal quotations omitted)). This argument is wholly without merit.

In *Manuel*, the Supreme Court directed its attention at both the arrest and post-arraignment detention of Elijah Manuel, which occurred without probable cause. The defendants choose to ignore the nature of the Court's inquiry. It is evident from the decision itself that the Court was addressing the deprivations of liberty without probable cause:

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000); *Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997); *White v. Frank*, 855 F.2d 956 (2d Cir.1988); *see also Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016) (Independent, untainted information

17

establishing probable cause fatal to malicious prosecution claim); *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (same).

While *Manuel* makes clear that the Fourth Amendment provides the basis for claims grounded centrally in the deprivation of liberty without probable cause, nothing in the decision limits the universe of possible post-arraignment deprivation claims to malicious prosecution, nor does it suggest that any other cause of action – i.e., plaintiff's fair trial claim – is necessary duplicative merely because one of the elements is a loss of liberty. Defendants' argument is best understood as shallow sophistry untethered to any substantive legal limitation on the long-established cause of action for denial of a fair trial.

**B.    Materiality and Causation**

The defendants further contend that plaintiff cannot establish causation because the only avenue by which the fabrications could reach the jury was through the defendants' testimony at trial.  As the officers are immune from suit for giving false testimony before the grand jury or at any subsequent pre-trial hearings or at plaintiff's trial, they reason, plaintiff cannot prove causation. This argument blatantly misstates Second Circuit decisional law.

The Second Circuit has expressly held that where a fair trial "claim exists independently of the [testimony for which defendant is immune]," then the claim is not "based on" that testimony.  *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir.), cert. denied, 135 S. Ct. 2335 (2015) (citing Rehberg v. Paulk, 132 S.Ct. 1497, 1506 (2012)). Hence, as in *Coggins*, if the plaintiff can establish that the defendants lied to prosecutors by providing them with falsified police reports and otherwise lying to or materially misleading prosecutors in their various communications, the plaintiff has made out his fair trial claim. *Id.*. As another district court ruled while rejecting the defendants' same argument, "[d]efendants' argument misreads *Jovanovic* and

18

conflates the materiality (likely to influence a jury) and causation (consequential deprivation of liberty) elements of a denial of fair trial claim." *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016). As the court further noted, "[b]ecause materiality and causation are two distinct elements, and a denial of fair trial claim can accrue when fabricated information is forwarded to the prosecution (with no jury trial at all), the fact that allegedly fabricated evidence would be inadmissible at trial by itself is not a bar to the claim. *Id.*, at 279 (emphasis in original). Accordingly, nothing in *Garnett* can reasonably be read to require plaintiff to rely only fabrications that would not hypothetically come before a criminal jury through something other than the defendant's testimony in the criminal case.

**C.    The Evidence of Fabrications**

Plaintiff has provided ample evidence that both Taylor and Pizzarro fabricated evidence with the intent to convince a jury that plaintiff committed crime for which they did not possess competent proof. They fabricated evidence by misrepresenting the time, place, and manner in which they purportedly recovered a pistol in order to connect the gun to the plaintiff.

The Sprint report generated as a result of this arrest communicates clearly that (a) plaintiff was arrested at 7:25 p.m.; (b) no weapon was actually recovered until 7:49 p.m.; and (c) that in addition to the three defendants, there was, at a minimum, a sergeant from the 60th precinct and other officers assisting in the search. Thus, the record is clear that the search for the gun proceeded for at least 24 minutes after plaintiff's arrest, and was undertaken by numerous officers other than the defendants.

Nevertheless, shortly after the incident Taylor told the KCDA and attested under oath that while in pursuit of plaintiff, he saw plaintiff throw a gun in "the bushes" and that Taylor himself promptly found the gun in those very same bushes. This statement is facially contradicted by the

NYPD's own records.

Moreover, Taylor's co-defendant Pizzarro presented a conflicting, but equally untrue, rendition when he spoke to the KCDA prior to testifying at plaintiff's suppression hearing. Pizzarro claimed that, after receiving a radio call, he proceeded to the area described in the call and quickly found the pistol. In fact, Pizzarro claimed to be with the pistol alone for two to three minutes.

Both defendants' accounts were concocted because the objective story told in the Sprint report fatally undermined the defendants' decision to arrest plaintiff nearly half-an-hour prior to the discovery of the handgun, and would have precluded any possible prosecution. Defendants' deliberate decision to omit any mention of the involvement of the sergeant and other officers in the search for the handgun after the plaintiff had already been arrested further demonstrates that Taylor and Pizzarro intended to ensure that the KCDA would initiate plaintiff's prosecution and secure his conviction, without regard for the evidence or the truth.

It is evident that each of the defendants was aware that the others were participating in the development and communication of this false narrative. As the Second Circuit held twenty years ago, "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986); *Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir.1983); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972)).  The Court explained:

> [F]or liability to attach, there must have been a realistic
> opportunity to intervene to prevent the harm from occurring.

20

> Whether an officer had sufficient time to intercede or was capable
> of preventing the harm being caused by another officer is an issue
> of fact for the jury unless, considering all the evidence, a
> reasonable jury could not possibly conclude otherwise.

*Id*. (Internal citations omitted). Here, the record reflected that both defendants collectively and knowingly participated in the fabrication of evidence to factually justify not only the plaintiff's arrest, but bring about the initiation and continuation of his prosecution.

**POINT IV**

**DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
IMMUNITY**

Defendants have fallen short of establishing their entitlement to qualified immunity for plaintiff's false arrest or malicious prosecution.[2]  To be entitled to qualified immunity, defendants would have to show that (i) the right at issue was not clearly established, or (ii) that it was objectively reasonable for defendants to believe that their conduct did not violate these rights. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). Here, there is ample evidence that the defendants, having arrested plaintiff for possessing a gun they never saw him possess, crafted a falsified version of facts to obscure the absence of probable cause for plaintiff's arrest. They then collectively presented this fabricated version of events to prosecutors to bring about and sustain plaintiff's prosecution, with the intent of securing his conviction.

Qualified immunity is an affirmative defense, and therefore it is incumbent upon the defendants to demonstrate that they are entitled to its protection. They have made no effort to do so. They offer no testimony in any form from themselves or anyone else to suggest they misread or misinterpreted the applicable law, or that such an error was objectively reasonable. Moreover,

---

[2]   Defendants are not moving for qualified immunity for the fair trial claim. (Defs. Brief at 20).

defendants cannot seriously suggest that a reasonable police officer could believe that such egregious misconduct would not violate plaintiff's clearly established right to be free from false arrest and to not be maliciously prosecuted. The same evidence of defendants' malfeasance that establishes plaintiff's right to a trial on these claims is equally fatal to their putative entitlement to qualified immunity.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment should be denied in all respects.

Dated:   New York, New York
         October 18, 2017

                                        Respectfully submitted,

                                        LAW OFFICE OF ROBERT MARINELLI
                                        *Attorney for Plaintiff Robert Cooper*
                                        305 Broadway, Suite 1001
                                        New York, New York 10007
                                        (212) 822-1419


                                        _/s_____
                                        Robert Marinelli, Esq.

23