UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   OCT 15 2018   ★

BROOKLYN OFFICE

------------------------------------------------------------ x

ROBERT COOPER,

                Plaintiff,

        - against -

CITY OF NEW YORK, ET AL.,

              Defendants.

**MEMORANDUM OF DECISION**
14-CV-1761 (RJD) (RML)

------------------------------------------------------------ x

DEARIE, District Judge

    Plaintiff Robert Cooper ("Cooper") brings claims under 42 U.S.C. § 1983 alleging an unlawful stop and search, false arrest, failure to intervene, malicious prosecution, and denial of a right to fair trial against the City of New York and three individual defendants, New York City Police ("NYPD") Officers Walsh, Taylor, and Pizzarro.[1]  Cooper contends that on January 12, 2012, the officers stopped him without reasonable suspicion and arrested him for criminal possession of a firearm.  He claims that he was not observed in possession of a firearm, and that the officers perpetuated a false narrative regarding his arrest.  Defendants move for summary judgment, arguing that these claims are barred by a release Cooper signed in an unrelated case against the City, and, alternatively, that any surviving claims are not viable.  Defendants' motion is denied.

---

[1] Cooper also brings a claim pursuant to 42 U.S.C. § 1983 alone.  This claim is flawed and is dismissed.  See Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 159 (2d Cir. 2005) (citations omitted).

PROCEDURAL HISTORY

This action is the fourth in a series of lawsuits Cooper has filed against the City and individual police officers for violations of his constitutional rights. Our analysis focuses only on the third lawsuit, which Cooper filed on January 18, 2013, and this, his fourth suit.[2]

On January 18, 2013, Cooper filed his third lawsuit: Robert Cooper v. City of N.Y., et al., No. 13-CV-0325 (JG) (RER) ("Cooper III"). Def. Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") ¶ 24; Zimmerman Decl. in Supp. of Def. Mot. for Summ. J., ECF No. 48 ("Zimmerman Decl."), Ex. R, Complaint. The suit was related to Cooper's arrest (unrelated to the arrest at issue in this case) on September 6, 2012. Zimmerman Decl., Ex. R, ¶ 12. On or about September 18, 2013, Cooper entered into a settlement agreement to settle all claims in Cooper III for $6,500. Def. 56.1 ¶ 26; Zimmerman Decl. Ex. S, Cooper III Stipulation of Settlement (Sept. 18, 2013) ¶ 2. As part of that settlement, on September 9, 2013, Cooper executed a General Release (the "Release"), Def. 56.1 ¶¶ 27-28; Zimmerman Decl., Ex. T, which states, in relevant part, that he:

> [R]elease[s] and discharge[s] the defendants, City of New York, . . . and all past and present officials, employees, representatives and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of [his] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees.

---

[2] On January 28, 2011, Cooper filed his first lawsuit against the city: Robert Cooper v. City of N.Y., et al., No. 11-CV-0452 (ENV) (JMA) ("Cooper I"). See Def. 56.1 ¶ 19; Zimmerman Decl., Ex. I, Complaint. On October 6, 2011, he filed his second lawsuit: Robert Cooper v. City of N.Y., et al., No. 11-CV-4873 (SJ) (RER) ("Cooper II"). Id. at ¶ 20; Zimmerman Decl., Ex. O, Complaint. On or about February 23, 2012, Cooper entered into a settlement agreement with the City to settle all claims in both Cooper I and Cooper II for a total of $18,500. Id. at ¶ 22; Zimmerman Decl., Exs. M, P. These settlements were conditioned on Cooper executing two "General Releases." Id. ¶ 23; Zimmerman Decl., Exs. N, Q. The General Releases were roughly equivalent to the General Release Cooper signed in connection with his third lawsuit, Cooper III, on September 9, 2013. Id. ¶ 23.

Cooper brings this fourth case based on his arrest on January 12, 2012 by NYPD Officers[3] Walsh, Taylor, and Pizzarro, after which he was charged with Criminal Possession of a Firearm in the 4th Degree, and which continued until December 16, 2013, when the state dismissed the criminal charges against him. See generally Plaintiff Counter Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Plaintiff 56.1").

## BACKGROUND

On the night of January 12, 2012, at approximately 7:00 p.m., Cooper was seen by Defendants Walsh, Taylor and Pizzarro in the courtyard outside of the Gravesend Apartment Projects in Brooklyn, New York, with a group of individuals. Def. 56.1 ¶ 1; Zimmerman Decl., Ex. C, Taylor Dep. ("Def. Taylor Dep.") at 8:18-10:08. Defendants were patrolling the area in an unmarked van. Def. Taylor Dep. at 8:10-14. Officer Pizzarro was driving the van, Officer Walsh was sitting in the passenger seat, and Officer Taylor was in the first bench seat. Def. Taylor Dep. at 8:19-25. Officer Taylor recognized Cooper. Cooper Decl., ECF No. 52, Ex. J, Taylor Dep. ("Plaintiff Taylor Dep.") at 13:13-18. Defendants observed the group, including Cooper, begin to disperse. Def. Taylor Dep. at 10:21-24. Cooper was "just trying to get away from [the] police." Zimmerman Decl., Ex. E, Cooper. Dep. ("Def. Cooper Dep.") at 16:7-10. At some point, Cooper heard a friend shout, "police are behind us." Def. Cooper Dep. at 10:19-24. Defendants claim that Officer Pizzarro informed Officers Walsh and Taylor that he thought Cooper was in possession of a firearm. Def. 56.1 ¶ 1; Def. Taylor Dep. at 10:24 – 11:2; 17:6-14. The officers began to drive in Cooper's direction. Def. Taylor Dep. at 11:3-5; Def. Cooper Dep.

---

[3] As Defendants note, the officers were subsequently promoted. However, for the purposes of this opinion, we refer to them based on their titles at the time of the events in question. See Def. 56.1 n.1.

at 11:4-19.  According to Cooper, all of the officers knew him.[4]  Def. Cooper Dep. 12:7-11.  At

first, he refused to stop.  Def. Cooper Dep. 12:4-15:3.

During the pursuit, Officer Taylor saw Cooper make a motion "like he was throwing

something—like he was throwing a hard object."  Def. Taylor Dep. at 11:13-21.  Officer Taylor

was not sure what was being thrown, but thought he saw Cooper throw a black object.  Def. 56.1

at 5; Def. Taylor Dep. at 34:21-35:20, 36:3-6.  Officer Taylor also claimed that he saw Cooper

"fidgeting with his waistband…as if he had something there."  Def. Taylor Dep. at 21:24-26:17.

Officer Walsh testified that he could see that the object was a firearm.[5]  Zimmerman Decl., Ex.

D, Walsh Dep. ("Def. Walsh Dep.") at 46:21-23; 47:5-16.  In his deposition, Cooper admits that

on the night of his arrest, he told a police officer that he threw a black scarf into the grass while

he was being pursued.  Def. 56.1 ¶ 4; Def. Cooper Dep. at 21:09-10, 22:20-23:7.  Cooper's scarf

was not recovered.  Def. Cooper Dep. at 22:25-23:1.  Cooper disputes that he was seen with a

firearm.  Plaintiff 56.1 ¶ 1; Plaintiff Response in Opp'n to Def. Mot. for Summ. J., ECF No. 50

("Plaintiff Opp'n"), at 15-16.  And he appears to dispute that he was ever in possession of one on

the night of his arrest.  Zimmerman Decl., Def. Requests to Admit, ECF No. 48, at 1-2.

Officer Walsh radioed that Cooper had thrown something.  Def. 56.1 ¶¶ 6, 7; Def. Walsh

Dep. at 59:03-23.  Officers Walsh and Taylor got out of the vehicle and pursued Cooper on foot.

Def. 56.1 ¶¶ 2-3; Def. Taylor Dep. at 11:7-16.[6]  Eventually, Cooper stopped, and Officer Walsh

handcuffed him.  Def. Cooper Dep. 19:17-13.  Officer Taylor arrested Cooper at 7:25 p.m.

---

[4] Officer Taylor testified that he had previously arrested Cooper for possession of marijuana, and that he knew other officers that had also arrested Cooper.  Plaintiff Taylor Dep. 167:25-168:20.
[5] Although Walsh maintained that he believed the object thrown by Cooper was a firearm, he could recall little else about the surrounding circumstances.  See generally Def. Walsh Dep. at 47-50.
[6] There is conflicting testimony about whether Officer Walsh pursued Cooper on foot.  See Def. Pizzarro Dep. at 50:21-23; Plaintiff 56.1 ¶ 3.  There is also conflicting testimony about the speed of the pursuit.  Officer Taylor testified that Cooper ran away from the officers.  Def. Taylor Dep. at 11:5-7; Def. Pizzarro Dep. at 51:2-3.  Cooper testified that he was "walking quickly."  Def. Cooper Dep. at 12:2-3.

Plaintiff 56.1 ¶ 29; Cooper Decl., Ex. 1, Sprint Report; Ex. 6, Rose Dep. at 21:21-22:04.

Meanwhile, Officer Pizzarro walked to the location indicated by Officer Walsh to conduct a

search. Def. 56.1 ¶¶ 6, 7. A Sergeant from the 60th precinct also called in the Emergency

Service Unit to assist. Plaintiff 56.1 ¶ 30. After what he described as "a little bit of search,"

Officer Pizzarro, using his flashlight, found a firearm "immediately" in the grass outside of 3112

Neptune Avenue.[7] Def. 56.1 ¶ 81; Zimmerman Decl., Ex. B, Def. Pizzarro Dep. ("Def. Pizzarro

Dep."), at 51:04-53:25; Zimmerman Decl., Ex. H, NYPD Laboratory Report (identifying firearm

found as "P Auto S semi-automatic Model 1 017, serial number 22579"). Officer Pizzarro

waited with the firearm until Officer Taylor, the arresting officer, arrived. Plaintiff 56.1 ¶ 37;

Plaintiff Taylor Dep. at 74:11-75:18.

Officer Taylor conveyed information regarding Cooper's arrest to the Kings County

District Attorney's Office the following day. Def. 56.1 ¶ 10. A criminal complaint was filed

against Cooper on January 13, 2012, based on the information provided by Officer Taylor.

Plaintiff 56.1 ¶ 33; Zimmerman Decl., Ex. F, Criminal Compl. Cooper was arraigned on January

14, 2012, two days after the arrest at issue. Def. 56.1 ¶ 11. He spent approximately one week in

custody at Rikers Island prior to making bail. Def. 56.1 ¶ 12.

---

[7] Cooper identifies inconsistencies in the officers' testimony, arrest paperwork, and in what was conveyed to the King's County District Attorney. Most importantly, he disputes when, where, how, and by whom the firearm was found. Plaintiff 56.1 ¶ 7-8; see also Plaintiff Taylor Dep. 128:11-131:24, 159:22-160:23, 161:14-162:21. In particular, Cooper notes that although he was arrested at 7:25 pm, the pistol was not recovered until 7:49 pm. See Plaintiff 56.1, ¶ 29 (citing Cooper Decl., Ex. 1, Sprint Report). There is also dispute as to whether the firearm was found in the grass or in the bushes, and whether it was found by Officer Pizzarro or Officer Taylor. Def. 56.1 ¶ 8, Plaintiff 56.1 ¶ 8. Furthermore, despite his role in the arrest, Officer Pizzarro was not mentioned in any of the relevant police paperwork. See Plaintiff Taylor Dep. at 114:3-115:6. Cooper also notes that in the Criminal Complaint and in discussions with the Kings County District Attorney's Office, Officer Taylor reported that *he*, not Officers Walsh or Pizzarro, pursued Cooper on foot, and saw him throw what appeared to be a firearm into the bushes, and subsequently apprehended Cooper and recovered the pistol. See Plaintiff 56.1 ¶ 32-33; Zimmerman Decl., Ex. F, Crim. Compl.; Def. Cooper Decl., Ex. 3, Plaintiff White Dep. at 14:16-16:17.

The following year, on November 14, 15, and 19, 2013, Kings County Criminal Court held a hearing on Cooper's motion to suppress the firearm seized during his January 2012 arrest. Def. 56.1 ¶ 13; Zimmerman Decl., Ex. I, Judge Grasso Order of Nov. 25, 2013. Officers Taylor and Pizzarro testified at the hearing. Def. 56.1 ¶¶ 13-14. Prior to the hearing, Officers Pizzarro and Taylor also each met with an assistant district attorney to discuss their roles in Cooper's arrest and the testimony each would give at the hearing. Plaintiff 56.1 ¶ 35, 36; Cooper Decl., Ex. 6, Plaintiff Pizzarro Dep. at 80:19-81:5; Ex. 7, Plaintiff Taylor Dep. at 104:11 – 115:6. On November 14, 2014, Officer Pizzarro testified at the suppression hearing. Plaintiff 56.1 ¶ 37; Cooper Decl., Ex. 7, 11/14/2015 Supp. Hrg. Tr. Cooper's motion to suppress was ultimately denied. Def. 56.1 ¶ 15; Zimmerman Decl. Ex. I, Judge Grasso Order I at 6. However, after Cooper's attorney obtained a copy of Officer Pizzarro's memo book, which Officer Pizzarro claimed had been lost when he testified at the first suppression hearing, the court reopened the hearing on December 4, 2013. Def. 56.1 ¶ 16. After determining that Officer Pizzarro's testimony was not reliable, the court granted Cooper's motion to suppress the firearm. Def. 56.1 ¶ 17. The state subsequently moved to dismiss all charges related to Cooper's January 12, 2012 arrest. Def. 56.1 ¶ 18; Zimmerman Decl. Ex. K, Transcript of Proceedings, People v. Robert Cooper, No. 2012KN003462 (Kings Cty. Crim. Ct. Nov. 25, 2013) at 2:11-14 (indicating that "the People cannot prove their case beyond a reasonable doubt and [] are moving to dismiss for that reason").

On March 17, 2014, Cooper filed this case against the City, Officers Walsh, Taylor, and Pizzarro, and John and Jane Doe Defendants 1 through 10, for their actions related to his January 12, 2012 arrest and subsequent prosecution. Compl., ECF No. 1. The parties engaged in discovery from September 2014 to January 2017. On November 3, 2017, Defendants filed this

Motion for Summary Judgment. See Def. Notice of Mot. for Summ. J., ECF No. 46 (Def. Mot."); Def. Mem. in Supp. of Mot. for Summ. J., ECF No. 49 ("Def. Mem."); Def. Reply in Supp. of Mot. for Summ. J., ECF No. 54 ("Def. Reply"); but see Plaintiff Opp'n.

<div align="center">DISCUSSION</div>

Summary judgment is only appropriate where the submissions of the parties, taken together, show that "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,'" Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 64 (2d Cir. 2002) (summary judgment warranted where "facts and law will reasonably support only one conclusion"); Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) ("mere existence of some alleged factual dispute [] will not defeat an otherwise properly supported motion for summary judgment"). An issue of fact is genuine if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, we must "construe the facts in the light most favorable to the non-moving party and [we] must resolve all ambiguities and draw all reasonable inferences against the movant." Walsh v. NYC Hous. Auth., 828 F.3d 70, 74 (2d Cir. 2016) (quoting Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 79-80 (2d Cir. 2009) (internal quotation marks omitted). The moving party "bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). If satisfied, the burden "shifts to the nonmoving party," Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986), who cannot avoid summary judgment by relying on "conclusory allegations or unsubstantiated speculation." Jeffreys v. City of N.Y., 426 F.3d 549,

<div align="center">7</div>

554 (2d Cir. 2005) (internal quotation marks and citations omitted). He must instead "offer some hard evidence showing that [his] version of the events is not wholly fanciful." Id. "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

### A. The Release

Defendants argue that the Release bars all claims Cooper now brings against them, or, alternatively, that it bars claims based on events that occurred prior to the date of the Release. See Def. Mem. at 1, 6-7, 10-13; Def. Reply at 9-11. Cooper, meanwhile, contends that Defendants are precluded from raising the Release as an affirmative defense because they failed to do so in a timely manner. See Fed. R. Civ. P. 8(c)(1) ("[i]n responding to a pleading, [] party must affirmatively state [] affirmative defense"); see also Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984) (failure to plead affirmative defense in answer "results in [] waiver of [] defense and [] exclusion from the case") (internal quotation marks and citations omitted).

Defendants did not raise the Release as an affirmative defense until November 3, 2017, when they filed their Motion for Summary Judgment. This does not, however, foreclose our consideration of the Release. In this Circuit, defendants may raise, and courts may "entertain unpleaded affirmative defenses at [] summary judgment [] in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 176 (2d Cir. 2014) (quoting Rose v. AmSouth Bank of Fla., 391 F.3d 63, 65 (2d Cir. 2004)) (internal quotation marks omitted); see also Domenech v. Parts Auth., Inc., 653 Fed. App'x 26, 27 (2d Cir. 2016) (summary order) (affirmative defense can be raised at summary judgment "so long as there [is] no showing of prejudice or bad faith") (citations omitted). The record in this case is

devoid of any evidence suggesting bad faith or dilatory motive by Defendants in failing to assert

the Release earlier. See Sompo, 762 F.3d at 176; see also Def. Reply at 2 n.1. Nor can we credit

Cooper's assertion that he has been prejudiced by Defendants' untimely assertion of the Release.

See Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000).

Cooper had notice of the existence of the Release since he signed it in September 2013.

Def. 56.1 ¶¶ 26-28; Zimmerman Decl., Ex. T, Cooper III Release. He was also sufficiently on

notice of Defendants' intent to rely upon the Release since at least June 2014, when, in response

to Defendants' Requests to Admit, he acknowledged that it was legally binding. See

Zimmerman Decl., Ex. U, Plaintiff Response to Def. Requests to Admit, ¶¶ 35-36; see also In re

Livent, Inc. Noteholders Sec. Litig., 355 F. Supp. 2d 722, 727 (S.D.N.Y. 2005) (affirmative

defense may be untimely raised when plaintiff "has the opportunity to respond effectively [],

and has otherwise suffered no prejudice"); Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir.

2003), aff'd on other grounds after remand sub nom. Curry v. Lynch, 323 Fed. App'x 63 (2d Cir.

2009). Additionally, Defendants' intent to rely on the Release was reinforced when they: (1)

produced a copy of the Release to Cooper on September 9, 2014, as part of their Rule 26(a)(1)

disclosures, indicating that they "may use [it] to support their claims and/or defenses,"

Zimmerman Suppl. Decl., ECF No. 53, Ex. V, and (2) filed a May 13, 2015 letter to Magistrate

Judge Robert M. Levy, quoting from and attaching the Release, and acknowledging that

"Plaintiff has waived all of his claims in this case that accrued prior to September 9, 2013,"

Letter from T. Zimmerman of May 13, 2015, ECF Nos. 12 & 13, at 2. Cooper is not unfairly

prejudiced by Defendants' untimely assertion of the Release as an affirmative defense.

Cooper also suggests that, to entertain Defendants' affirmative defense at this late stage,

we must construe their summary judgment motion as a motion to amend their answer to the

complaint—subject to the limitations outlined in Federal Rules of Civil Procedure 15 and 16.

Plaintiff Opp'n at 6-7. We decline to do so. It is true that some courts in this Circuit have

followed Cooper's suggested approach. See, e.g., Reyes v. Phoenix Beverages, Inc., 207 F.

Supp. 3d 206, 216–19 (E.D.N.Y. 2016), reconsideration granted in part, No. 13-CV-5588 (PKC)

(VMS), 2016 WL 6068130 (E.D.N.Y. Oct. 13, 2016) (citing Grochowski v. Phoenix Constr., 318

F.3d 80, 86 (2d Cir. 2003)); Arzu v. City of N.Y., No. 13-CV-5980 (RA), 2015 WL 4635602, at

*3 n.6 (S.D.N.Y. Aug. 3, 2015); Block v. First Blood Assocs., 988 F.2d 344, 350–51 (2d Cir.

1993). Many others, however, have not.[8] See, e.g., Sompo, 762 F.3d at 176-77; Rose, 391 F.3d

at 65; Curry, 316 at 330–31; Domenech, 653 Fed. App'x at 27; E. Sav. Bank, FSB v. Aufiero,

No. 14-CV-256 (JFB) (AYS), 2016 WL 1056998, at *13-14 n.4 (E.D.N.Y. Mar. 14, 2016);

Schwind v. EW & Assocs., 357 F. Supp. 2d 691, 698-99 (S.D.N.Y. 2005) (excusing failure to

include affirmative defense in answer given notice and opportunity to respond). In any event,

even if we were to construe Defendants' motion as a motion to amend, our analysis would be

unchanged. Federal Rule of Civil Procedure 15(a) instructs that we should "freely give leave [to

amend] when justice so requires." Fed. R. Civ. P. 15(a); see also Monahan, 214 F.3d at 283

("pleadings are to serve the limited role of providing the opposing party with notice" and "mere

technicalities" should not prevent cases from being decided on the merits") (citations omitted);

Block, 988 F.2d at 350 ("[t]he rule in this Circuit has been to allow a party to amend [] in the

absence of a showing [] of prejudice or bad faith") (citations omitted). As explained above, we

find no evidence of bad faith by Defendants or prejudice to Cooper. The interests of justice are

served by our consideration of the Release on the merits. See Fed. R. Civ. P. 15(a); see also

---

[8] We agree with Defendants that Federal Rule of Civil Procedure 16(b)(4) does not apply, given that Defendants never sought leave to amend their answer, and the Court never issued a scheduling order to allow them to do so. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent").

Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995) (the long-standing preference in this Circuit is that "litigation disputes be resolved on the merits"); see also Alvarado v. Am. Freightways, Inc., No. 4-CV-9536 (JCF), 2005 WL 1467893, at *6 (S.D.N.Y. June 21, 2005).

### B.    The Release Bars Cooper's Claims Predating Its Execution

We construe settlement agreements "according to general principles of contract law." Collins v. Harrison–Bode, 303 F.3d 429, 433 (2d Cir. 2002) (citations omitted). Pursuant to New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." Arzu, 2015 WL 4635602, at *4 (citing Pampillonia v. RJR Nabisco. Inc., 138 F.3d 459, 463 (2d Cir. 1998)).[9] "Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." Twine v. Four Unknown N.Y. Police Officers, No. 10-CV-6622 (DAB) (JLC), 2012 WL 6184014, at *8 (S.D.N.Y. Dec. 12 2012) (quoting Shklovskiy v. Khan, 709 N.Y.S.2d 208, 209 (2d Dep't 2000)). The "proper interpretation of [such] an unambiguous contract is a question of law for the court, and a dispute on such an issue may be properly resolved by summary judgment." Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002).

Courts in this Circuit have found general releases both similar and identical to the Release at issue here to be clear and unambiguous. See Caines v. Oudkerk, No. 17-CV-3060 (PGG), 2018 WL 3059653, at *3 (S.D.N.Y. June 20, 2018) (citing e.g., Cuadrado v. Zito, No. 13-CV-3321, 2014 WL 1508609, at *1-3 (S.D.N.Y. Mar. 21, 2014)); see also Staples v. Officer Acolatza, No. 14-CV-3933 (WHP), 2016 WL 4533560, at *2 (S.D.N.Y. Mar. 9, 2016) (citing

---

[9] While "federal law governs the validity of releases of federal causes of action," we "look to state law to provide the content of federal law." Twine v. Four Unknown N.Y. Police Officers, No. 10-CV-6622 (DAB) (JLC), 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12 2012) (citing Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 15 (2d Cir.1993)). We "apply New York contract principles to determine the scope and effect" of a Release. Id. (citing, e.g., Chepilko v. City of N.Y., No. 11-CV-2878 (ARR) (LB), 2012 WL 2792935, at *2 (E.D.N.Y. July 6, 2012)).

cases); Waters v. Douglas, No. 12-CV-1910 (PKC), 2012 WL 5834919, at *3 (S.D.N.Y. Nov. 14, 2012); Tromp v. City of N.Y., 465 Fed. App'x 50, 52 (2d Cir. 2012).

The Release applies to all "liability, claims, or rights of action" based on *violations of Cooper's civil rights* "from the beginning of the world" through the date upon which the Release was executed. Def. 56.1 ¶¶ 27-28; Zimmerman Decl., Ex. T (emphasis added). This language unambiguously bars Cooper's claims for violations of his civil rights that occurred before the execution of the Release. This includes claims that had fully materialized prior to execution of the Release, as well as inchoate claims based on events that allegedly violated his rights prior to execution of the Release. "Courts [] repeatedly hold that releases [like Cooper III Release] bar suit…for conduct that pre-dates the release." See Roberts v. Doe 1, No. 14-CV-9174 (AJP), 2015 WL 670180, at *5 (S.D.N.Y. Feb. 17, 2015) (citing, e.g., Tromp, 465 Fed. App'x at 52); see also Staples, 2016 WL 4533560, at *3 (same); see, e.g., Caines, 2018 WL 3059653, at *3; Coward v. City of N.Y., No. 16-4848 (FB), 2017 WL 2982976, at *1 (E.D.N.Y. July 12, 2017); Smith v. Doe, No. 15-CV-0245, 2016 WL 7046803, at *4 (E.D.N.Y. Oct. 31, 2016), report and recommendation adopted, No. 15-CV-245 (SLT) (RER), 2016 WL 7048700 (E.D.N.Y. Dec. 2, 2016) (plaintiff waived any and all rights of action that "may have existed" before the release date because "events that form the basis of the current action all predate the release"); but see Waters v. Douglas, No. 12-CV-1910 (PKC), 2012 WL 5834919 at *4 (S.D.N.Y. Nov. 14, 2012), appeal dismissed, No. 13-CV-195 (2d Cir. Mar. 13, 2013) (release identical to Cooper III Release covered "all then-existing claims").

The Release bars the majority of Cooper's claims. His stop and search and false arrest claims, based on alleged violations of his civil rights that undoubtedly occurred prior to the

Release's execution, are barred.[10]  Cooper's malicious prosecution, fair trial, and failure to

intervene claims, to the extent they are based on violations of his civil rights that occurred prior

to September 9, 2013, are also barred.  Cooper's claim brought pursuant to <u>Monell v. Dep't of

Soc. Servs. Of the City of N.Y.</u>, 436 U.S. 658 (1978) and his malicious abuse of process claim

are no longer before us.  <u>See</u> Plaintiff Opp'n at 1 n.1 (withdrawing claims).

The Release does not, however, bar Cooper's claims for violations that occurred *after* he

executed the Release.  <u>See Arzu</u>, 2015 WL 4635602, at *4 (looking to whether injury occurred

outside of Release period).  This is because there is a small span of time not covered by the

Release—from September 9, 2013, when the Release was executed, to December 16, 2013, when

the criminal charges were dismissed—during which Defendants allegedly violated Cooper's

rights.[11]  They did so by subjecting Cooper to ongoing criminal prosecution, and testifying at and

requiring him to attend a four-day suppression hearing in November and December 2013, all

based on a continued, allegedly false narrative about the circumstances of his arrest.  Def. 56.1

¶¶ 9-18.  These claims do not arise solely out of events predating the Release.

The record is devoid of evidence suggesting that Officer Walsh was involved in Cooper's

criminal prosecution after Cooper executed the Release.  As a result, Cooper's malicious

prosecution and fair trial claims are dismissed as to Officer Walsh.  <u>See Farid v. Ellen</u>, 593 F.3d

---

[10] Cooper acknowledges in his Response to Defendants' Memorandum in Support of their Motion for Summary Judgment that, if applicable, the Release bars claims related to his arrest.  Plaintiff Opp'n at 11-12.
[11] Defendants move for summary judgment on Cooper's fair trial claim, encouraging us to find that it is "duplicative of his Fourth Amendment claim" for malicious prosecution pursuant to Manuel v. City of Joliet, 137 S. Ct. 911 (2017).  They argue that <u>Manuel</u> "casts significant doubt on the continuing validity of the "right to fair trial" recognized by the Second Circuit."  Def. Mem. at 14-15.  We do not read this to be the holding of <u>Manuel</u>.  In any event, the law in this Circuit is clear that plaintiffs may assert simultaneous malicious prosecution and fair trial claims.  <u>See Soomro v. City of N.Y.</u>, No. 17-CV-1733, 2018 WL 3342322, at *2-3 (2d Cir. July 9, 2018) (summary order); <u>Debrosse v. City of N.Y.</u>, No. 17-CV-2663, 2018 WL 3198062, at *1-2 (2d Cir. June 28, 2018) (summary order); <u>McIntosh v. City of N.Y.</u>, 722 Fed. App'x 42, 43-45 (2d Cir. 2018) (summary order); <u>Garnett v. Undercover Officer C0039</u>, 838 F.3d 265, 276 n.6 (2d Cir. 2016); <u>Zahrey v. Coffey</u>, 221 F.3d 342, 355 (2d Cir. 2000); <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 129–31 (2d Cir. 1997).

233, 249 (2d Cir. 2010) ("personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.").

### 1. Cooper's Malicious Prosecution, Fair Trial, and Failure to Intervene Claims Survive Summary Judgment

Defendants are not entitled to summary judgment on Cooper's three surviving claims.

These claims—for malicious prosecution, denial of right to fair trial, and failure to intervene—all

turn on disputed issues of material fact and credibility determinations that are the province of the

factfinder at trial. See Manganiello, 612 F.3d at 161 (citing Reeves v. Sanderson Plumbing, 530

U.S. 133, 150-51 (2000)); see also Anderson, 477 U.S. at 248.

### a. Malicious Prosecution

Because Cooper argues that Defendants had no initial basis to prosecute him for

possession of the gun, the continuation of his prosecution after the execution of the Release

supports a claim of malicious prosecution.  To establish a claim for malicious prosecution, a

plaintiff must demonstrate that the defendant "(1) [] initiat[ed] or continu[ed] [] a criminal

proceeding against [the] plaintiff," Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997); (2)

"without probable cause to believe the proceeding c[ould] succeed, (3) the proceeding was begun

with malice and, (4) the matter terminated in plaintiff's favor," McDonough v. Smith, 898 F.3d

259, 269 n. 10 (2d Cir. 2018) (noting that these four elements are identical for the New York tort

of malicious prosecution and the constitutional one).  "[W]hen [a] malicious prosecution claim is

brought under Section 1983…a plaintiff must [also] establish a deprivation of liberty." Porat v.

Lincoln Towers Cmty. Ass'n, No. 4-CV-3199 (LAP), 2005 WL 646093, at *2 (S.D.N.Y. Mar.

21, 2005) (citing Albright v. Oliver, 510 U.S. 266, 274 (1994)).

The "existence of probable cause is a complete defense to a claim of malicious

prosecution." Bellamy v. City of N.Y., No. 12-CV-1025 (AMD) (PK), 2017 WL 2189528, at

*30–31 (E.D.N.Y. May 17, 2017), appeal filed No. 17-1859 (2d Cir. June 13, 2017) (citing Stansbury v. Wertman, 721 F.3d 84, 94–95 (2d Cir. 2013)); see also Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003). In this context, we consider probable cause "in light of facts known or reasonably believed at the time the prosecution was initiated" or continued, and based on whether "facts and circumstances [] would lead a reasonably prudent person to believe the plaintiff guilty." Bellamy, 2017 WL 2189528, at *30-31 (internal quotation marks and citations omitted). Stated differently, "[p]robable cause exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." United States v. Alvarado, No. 97-CR-177 (HB), 1998 WL 80213, at *1 (S.D.N.Y. Feb. 24, 1998) (citing U.S. v. Patrick, 899 F.2d 169 (2d Cir. 1990)). Courts presume the existence of probable cause for arrest and prosecution when a grand jury indictment is returned. Zahrey v. City of N.Y., No. 98-CV-4546 (DC) (PJC), 2009 WL 54495, at *9–10 (S.D.N.Y. Jan. 7, 2009), amended on reconsideration in part, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009). However, a "plaintiff can rebut this presumption by presenting evidence sufficient for a reasonable jury to find that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct taken in bad faith." Manganiello v. City of N.Y., 612 F.3d 149, 161–62 (2d Cir. 2010); see also Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003) (plaintiff cannot "rebut presumption of probable cause with mere conjecture and surmise") (internal quotation marks and citations omitted).

Ultimately, in light of (1) Cooper's testimony that Defendants fabricated evidence involving the firearm they found outside of the housing complex; (2) the inconsistencies Cooper identifies in the officers' accounts and their paperwork reflecting how, when, and where they

recovered the firearm; (3) the decision of Judge Grasso of the Kings County Criminal Court to suppress Officer Pizzarro's testimony due to its inconsistency with his testimony the month prior regarding his allegedly lost memo book, and his description of Officer Pizzarro's "evasive and defensive" manner; and (4) the alleged perpetuation of this falsified narrative throughout the state's criminal action against Cooper, we simply cannot conclude, as a matter of law, that a reasonably prudent officer could have believed that he had "lawful grounds for [continuing to] prosecut[e] [Cooper]." See Genia v. N.Y. State Troopers, No. 03-CV-870 (JFB) (AKT), 2007 WL 869594, at *12 (E.D.N.Y. Mar. 20, 2007) (quoting Rounseville v. Zahl, 13 F.3d 625, 629-30 (2d Cir. 1994)). If a jury were to believe Cooper's testimony, it could not conclude that the officers had probable cause to prosecute him for criminal possession of a firearm. See Curry, 316 F.3d at 336.

We retain skepticism as to Cooper's own account of the events of January 12, 2012. In particular, we are concerned by the fact that neither party provided the Court with Cooper's full deposition, and, as a result, it is unclear whether he admits or denies possessing a firearm on the night of his arrest. Despite these concerns, and viewing the record in the light most favorable to Cooper, we conclude that he has raised sufficient questions of fact and credibility with respect to the officers' conduct and testimony involving the firearm such that his claim must be resolved by the finder of fact at trial. See id. at 335-36 (defendant's testimony that he did not "throw anything away…[or] possess any controlled substance" and that drugs were planted to incriminate him, which contradicted officer's account, was "sufficient to raise a genuine issue of material fact as to whether [he] did in fact throw away a bag containing crack cocaine during [the] struggle"); see also Brandon v. City of N.Y., 705 F. Supp. 2d at 269-70 (S.D.N.Y. 2010)

16

(where officers' testimony was inconsistent as to whether they observed defendant toss bag on the ground, material question of fact remained).

For the same reasons, a material question of fact remains as to whether the prosecution against Cooper was initiated and continued with malice. See McDonough, 898 F.3d at 269 n.10; see also Manganiello, 612 F.3d at 163 ("lack of probable cause generally creates an inference of malice") (internal quotation marks and citations omitted); Cox v. Cty. of Suffolk, 827 F. Supp. 935, 939–40 (E.D.N.Y. 1993) (a "jury may, but is not required to, infer malice from the total lack of probable cause...insofar as that tends to show that Defendants did not believe in the guilt of the accused and that they did not continue the proceedings for a proper purpose") (citations omitted). The same is true with respect to Defendant's claim that they are entitled to qualified immunity. See D.C. v. Wesby, 138 S. Ct. 577, 589–91 (2018); Jackson v. Tellado, 236 F. Supp. 3d 636, 652 (E.D.N.Y. 2017) ("The ultimate question of qualified immunity, i.e., whether it was objectively reasonable for an officer to believe that his conduct did not violate a clearly established right, is to be decided by the court.") (citations omitted); see also Curry, 316 F.3d at 337 (denying summary judgment where genuine issues of material fact "exist[ed] as to whether [defendant] reasonably believed that he had probable cause to arrest [defendant] for a crime").

Turning to the remaining elements of Cooper's malicious prosecution claim, the record makes clear that Defendants Pizzarro and Taylor assisted in the continuation of Cooper's prosecution after the Release was executed, by discussing their respective roles in Cooper's arrest and reviewing their anticipated testimony with assistant district attorneys. See Plaintiff 56.1 ¶¶ 35, 36; see also Bermudez v. City of N.Y., 790 F.3d 368, 376–77 (2d Cir. 2015) ("a claim for malicious prosecution can [] be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or

importuning the authorities to act.'…[or] generated witness statements or was regularly in touch with the prosecutor") (citations omitted); Birch v. Danzi, No. 18-CV-839 (PKC) (LB), 2018 WL 3613016, at *6 (E.D.N.Y. July 26, 2018) (plaintiff sufficiently alleged that defendants initiated or continued prosecution where one prepared "allegedly falsified confession and forward[ed] it to the prosecutor," and others "lied during [] suppression hearing").

Second, we find that Cooper's criminal prosecution terminated in his favor. A proceeding is favorably terminated "only when its final disposition is such as to indicate the innocence of the accused," Murphy, 118 F.3d at 948, or to indicate that it is not "inconsistent with [his] innocence," Okoi v. El Al Israel Airlines, 378 Fed. App'x 9, 12 (2d Cir. 2010). "Generally, dismissals that have been found to be inconsistent with innocence fall into three categories: (1) misconduct on the part of the accused in preventing the trial from going forward, (2) charges dismissed or withdrawn pursuant to a compromise with the accused, and (3) charges dismissed or withdrawn out of mercy requested or accepted by the accused." Bellamy, 2017 WL 2189528, at *30 (internal quotation marks and citations omitted). None of these exceptions apply here. Following the reopened suppression hearing, Judge Grasso concluded that Officer Pizzarro was an uncredible witness because his testimony was "bizarre and implausible" and "diametrically opposed" to the testimony he provided the month before. Plaintiff 56.1 ¶ 41; Cooper Decl., Ex. 8, Grasso Decision, at 5, 8. As a result, the Judge suppressed Officer Pizzarro's testimony and the firearm. Id. at 9-10 ("[h]aving discredited the testimony of Officer Pizzarro in its entirety, it would be inappropriate for this court to permit his alleged exclamation regarding the firearm to stand as a basis for the initial pursuit of the defendant."). Recognizing that it could not prove its case against Cooper beyond a reasonable doubt without that evidence, the state dismissed all charges related to Cooper's January 12, 2012 arrest. Def. 56.1 ¶ 18;

Zimmerman Decl., Ex. K, 12/16/13 Crim. Ct. Tr.  This termination of Cooper's prosecution was not inconsistent with his innocence.

Finally, the facts before us are sufficient to indicate that Cooper suffered an injury outside the period covered by the Release sufficient to qualify as a deprivation of liberty for the purposes of his malicious prosecution claim.  Cf Porat v. Lincoln Towers Cmty. Ass'n, No. 4-CV-3199 (LAP), 2005 WL 646093, at *2 (S.D.N.Y. Mar. 21, 2005), aff'd, 464 F.3d 274 (2d Cir. 2006) (citations omitted).  The Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required suffers a Fourth Amendment deprivation of liberty."  See Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013) (internal quotation marks and citations omitted); see also Evans v. City of N.Y., No. 12-CV-5341 MKB, 2015 WL 1345374, at *6 (E.D.N.Y. Mar. 25, 2015) ("courts have found the deprivation of liberty element satisfied particularly where a criminal defendant was required to attend several post-arraignment court appearances, and/or where, as in New York, a defendant's release on his own recognizance requires the defendant to "render himself at all times amenable to the orders and processes of the court") (quoting N.Y. Crim. Proc. Law § 510.40).  Cooper's prosecution continued from the day he signed the Release, September 9, 2013, until December 16, 2013, when the charges against him were dropped.  In the interim, he was forced to attend a four-day suppression hearing.  While courts in this Circuit have found one court appearance insufficient to constitute a deprivation of liberty, see Porat, 2005 WL 646093, at *2-3, others have held that two or more court appearances, in addition to the conditions of bail, are sufficient, see Perez v. Duran, 962 F. Supp. 2d 533, 542-43 (S.D.N.Y 2013) (two court appearances after felony arraignment, along with travel restrictions, constituted deprivation of liberty); Murphy, 118 F.3d at 947 (eight court appearances, plus travel

restrictions, constituted deprivation of liberty); Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) ("attending criminal proceedings and obeying the conditions of bail" was a deprivation of liberty); Rohman v. NYC Transit Auth. 215 F.3d 208, 215–16 (2d Cir. 2000) (that plaintiff "return[ed] to court on at least five occasions" and "render[ed] himself at all times amenable to [] orders and processes of [] court" was a deprivation of liberty) (internal quotation marks omitted).

A material question of fact remains as to whether the continued assistance of Officers Taylor and Pizzarro *caused* Cooper to suffer this deprivation of liberty. It is true that defendants set in motion the events that led to Cooper's prosecution prior to his execution of the Release. However, without the preparation of the officers in advance of the suppression hearing and trial, it seems unlikely that the state could have continued to prosecute him, and equally unlikely that a suppression hearing would have been necessary. Resolution of this issue turns on facts not available to us. A jury must evaluate whether the suppression hearing was proximately caused by the officers' post-Release, pre-trial assistance. Defendants are not entitled to judgment as matter of law on Cooper's malicious prosecution claim.

### b. Fair Trial

The factual predicate for Cooper's malicious prosecution claim and his fair trial claim— the alleged, ongoing fabrication of evidence—is the same. The questions of fact and credibility that preclude summary judgment on his malicious prosecution claim also dictate our conclusion with respect to his fair trial claim. When a "police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redresseable in an action for damages under 42 U.S.C. § 1983." Ricciuti, 124 F.3d at 130. To establish a claim based on denial of an individual's right to a fair trial, a plaintiff must demonstrate that "an (1) investigating official (2) fabricates evidence (3) that is likely to

20

influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff

suffers a deprivation of liberty as a result." Jovanovic v. City of N.Y., 486 Fed. App'x 149, 152

(2d Cir. 2012) (citing Jocks, 316 F.3d at 138); Garnett v. Undercover Officer C0039, 838 F.3d

265, 277 (2d Cir. 2016). As explained above, Defendants have not proven the absence of any

genuine issue of material fact as to whether the officers fabricated evidence against Cooper.

Furthermore, we find that the allegedly fabricated evidence would be material to and likely to

influence a jury's decision on his charge of criminal possession of a firearm. See Jovanovic, 486

Fed. App'x at 152–53; see also Cook v. City of N.Y., 243 F. Supp. 3d 332, 351 (E.D.N.Y. 2017).

The undisputed facts demonstrate that Officers Taylor and Pizzarro, investigating

officers, communicated the allegedly fabricated information to prosecutors again—*after* Cooper

executed the Release. See Ricciuti, 124 F.3d at 130. Furthermore, though the law in this Circuit

is unsettled as to whether a deprivation of liberty that satisfies the injury requirement for

malicious prosecution also satisfies the same prong for fair trial claims, we find that Cooper's

attendance at the four-day suppression hearing qualifies as a deprivation of liberty for the

purposes of both claims. See Gogol v. City of N.Y., No. 15-CV-5703, 2017 WL 3449352, at

*11-12 (S.D.N.Y. Aug. 10, 2017) (finding case law examining deprivation of liberty for

malicious prosecution instructive for the same analysis for fair trial claim) (citing Gomez v. City

of N.Y., No. 16-CV-1274 (NGG) (LB), 2017 WL 1034690, at *9 (E.D.N.Y. Mar. 16, 2017)).

As with his malicious prosecution claim, a material question of fact exists as to whether

the deprivation of liberty Cooper suffered was caused by the officers' communications with the

district attorneys before the suppression hearing. See Garnett, 838 F.3d at 277; see also Roberts

v. City of N.Y., No. 16 CIV. 5409 (BMC), 2017 WL 4357291, at *10 (E.D.N.Y. Sept. 29,

2017), appeal withdrawn sub nom. Roberts v. Azize, No. 18-765, 2018 WL 3031140 (2d Cir.

May 24, 2018) ("plaintiff must establish a causal connection between the fabricated evidence and [] deprivation of liberty"). For this and the reasons discussed above, Defendants are not entitled to summary judgment on Cooper's fair trial claim.

### i.    Testimonial Immunity

Defendants suggest that absolute testimonial immunity shields them from liability for Cooper's malicious prosecution and fair trial claims. They are correct only in so far as Cooper brings claims based on deprivations of his liberty that resulted from the officers' testimony at the suppression hearing. See Rehberg v. Paulk, 556 U.S. 356 (2012) ("a trial witness [sued in a Section 1983 case] has absolute immunity with respect to *any* claim based on the witness' testimony"); Daloia v. Rose, 849 F.2d 74, 76 (2d Cir. 1988) ("'[i]n adversarial pretrial proceedings as well as at trial, absolute witness immunity is essential if the truth-seeking function of the proceeding is to be fully served.'... police officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony.'") (emphasis added) (citations omitted). Cooper does not appear to bring any such claims.

### c.    Failure to Intervene

Cooper's final claim is that the officers are liable for failing to intervene to prevent the two previously discussed violations of his constitutional rights. See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (law enforcement officials have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in [their] presence by other officers."); Ying Li v. City of N.Y., 246 F. Supp. 3d 578, 618–19 (E.D.N.Y. 2017) (officer who fails to intervene "is liable for [] preventable harm caused by the actions of [] other officers where that officer observes or has reason to know" of constitutional violation) (quoting Anderson, 17 F.3d at 557). To establish a claim for failure to intervene, a plaintiff must demonstrate that "(1) the officer's failure 'permitted fellow officers to violate [the plaintiff's]

22

clearly established statutory or constitutional rights,' and (2) it was 'objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights.'" Id. (quoting Ricciuti, 124 F.3d at 129). He must also demonstrate that "the officer had a realistic opportunity to intervene…but failed to do so." Id. (internal quotation marks and citations omitted). As discussed, a material question of fact remains as to whether Defendants fabricated evidence of the firearm and used it to initiate and continue Cooper's prosecution. Thus, a material question of fact remains as to whether they had a realistic opportunity to prevent the alleged constitutional harm from occurring during the pendency of the criminal case or at the suppression hearing. See id. Summary judgment is denied as to Cooper's failure to intervene claim.

## CONCLUSION

Cooper is not prejudiced by the City's untimely assertion of the Release. Furthermore, genuine issues of material fact and credibility remain as to Cooper's surviving claims for malicious prosecution and fair trial, with respect to Officers Pizzarro and Taylor, and failure to intervene, with respect to Officers Pizzarro, Taylor, and Walsh. Resolution at this stage is inappropriate and all three claims will proceed to trial.

SO ORDERED:

s/ RJD

Dated: October 11, 2018
Brooklyn, NY

Raymond J. Dearie
United States District Judge